EMERY, BIRD, THAYER REALTY CO. v. UNITED STATES.

(District Court, W. D. Missouri, W. D. July 27, 1912.)

No. 3,821.

1. INTERNAL REVENUE (§ 38*)—RECOVERY OF TAXES PAID.

Under Act Cong. March 3, 1887, c. 359, 24 St. 505 (U. S. Comp. St. 1901, p. 752), as amended by Act March 3, 1911, c. 231, subc. 2, § 24, par. 20, and subc. 14, § 297, par. 7, 36 Stat. 1087, 1168 (U. S. Comp. St. Supp. 1911, pp. 138, 245), authorizing suits in the district court against the United States founded on any law of Congress, a suit to recover taxes alleged to have been wrongfully assessed and collected under the Corporation Tax Law may be brought directly against the United States, instead of being brought against the collector of internal revenue.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. § 38.*]

2. INTERNAL REVENUE (§ 9*)—CORPORATION EXCISE TAX—LIABILITY.

Under Corporation Tax Law (Act August 5, 1909, c. 6, 36 Stat. 112 [U. S. Comp. St. Supp. 1911, p. 946]) § 38, imposing a tax on every corporation organized for profit and having a capital stock represented by shares with respect to the carrying on or doing business by the corporation, a corporation to be subject to the tax must be organized for the purpose of doing business, and, in addition, must be actually engaged in that business.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*]

3. INTERNAL REVENUE (§ 9*)—CORPORATION EXCISE TAX—LIABILITY.

Under Corporation Tax Law (Act August 5, 1909, c. 6, 36 Stat. 112 [U. S. Comp. St. Supp. 1911, p. 946]) § 38, providing that every corporation organized for profit and having a capital stock represented by shares shall be subject to a special excise tax with respect to the carrying on or doing business by the corporation, a corporation, organized solely for the purpose of taking over and holding the real estate and leasehold interests owned by a dry goods corporation, leasing such property to the dry goods corporation, collecting the rents and distributing them among its stockholders, and which has actually executed a long term lease of such property to the dry goods corporation and surrendered the management and control thereof, is not subject to the tax, although it was organized under a provision of law relative to the organization of business and manufacturing corporations for profit, since, even though a corporation be deemed to have organized for business purposes, if it abstains from doing business, it is not subject to the tax.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*]

4. INTERNAL REVENUE (§ 6*)—DIRECT TAX—CORPORATIONS.

Where property owned by a corporation could not be directly taxed if owned by an individual, it cannot be so taxed solely by virtue of its corporate ownership.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 7; Dec. Dig. § 6.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. INTERNAL REVENUE (§ 6*)—DIRECT TAX—RENTS AND INCOME.

    Taxes on real estate being direct taxes, taxes on the rents or income thereof are also direct taxes.

    [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 7; Dec. Dig. § 6.*]

In Equity. Suit by the Emery, Bird, Thayer Realty Company against the United States of America. Judgment for plaintiff.

This is a suit by plaintiff against the United States under the act of Congress approved March 3, 1887, commonly known as the "Tucker Act," to recover certain sums paid by plaintiff, under protest, to C. G. Burton, collector of the Sixth internal revenue collection district of Missouri, at Kansas City, assessed under the corporations special excise tax law, approved August 5, 1909. The defendant contests the suit upon the grounds: First, because the cause of action arises out of the administration of the internal revenue laws of the United States, and this court is without jurisdiction to consider the subject-matter thereof; that plaintiff has brought this suit against the wrong party, and should have brought it against the collector of internal revenue for the Sixth district for Missouri; second, because, in any event, the plaintiff is a corporation organized for profit, and is doing business in the corporate capacity within the true intent and meaning of the act of August 5, 1909, and hence is liable for the tax assessed and collected.

The specific findings of fact and conclusions of law required by statute to be set forth are as follows:

### Findings of Fact.

Plaintiff is a corporation organized on the 14th day of January, 1908, under the laws of the state of Missouri in such cases made and provided, and having its principal office and place of business and residence at Kansas City, in the county of Jackson, and state of Missouri, in the Western Division of the Western District of Missouri.

The purposes for which plaintiff was organized, as set forth in its articles of association are as follows, to wit:

"Seventh. That the purposes for which this corporation is formed are the following, to wit:

"(1) To acquire and hold the title to lots 'H,' 'I,' 'J,' and 'K' in block twenty-three (23) in McGee's addition to the city of Kansas (now Kansas City), Missouri, and to acquire and hold the leasehold interest of the Emery, Bird, Thayer Dry Goods Company in the following described real estate situate in Kansas City, Missouri, to wit: The south thirty-two (32) feet of lot numbered forty-nine (49) in Swope's addition to the city of Kansas (now Kansas City); also all of lots numbered forty-eight (48), forty-seven (47) seventy-six (76), seventy-seven (77) and seventy-eight (78) in said addition, except that portion of said lots forty-seven (47), forty-eight (48) and forty-nine (49) heretofore condemned for the purpose of widening Walnut street. Also a strip of land described as follows: Beginning at the southwest corner of said lot numbered seventy-eight (78); running thence north on a line parallel to the west line of Grand avenue in said city one hundred and twenty-eight (128) feet to a point in the west line of said lot numbered seventy-six (76); thence west sixteen and one-half (16½) feet more or less to the east line of said lot numbered forty-nine (49); thence south on a line parallel to the east line of Walnut street in said city one hundred twenty-eight (128) feet more or less to the southeast corner of said lot numbered forty-seven (47); thence east sixteen and one-half (16½) feet more or less to the place of beginning. Said last mentioned strip of land having formerly been the south one hundred twenty-eight (128) feet of the alley running north and south through the block in said Swope's addition, bounded on the north by Tenth street, on the east by Grand avenue, on the south by Eleventh street and on the west by Walnut street, said portion of said alley comprised in the boundaries of said strip aforesaid having been by the order and decree of the county court of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

said Jackson county, made and entered May 6th, 1889, vacated as such. Said leasehold interest being the unexpired term of a lease of said last described premises from John Quincy Adams, Moses Williams, Charles E. Cotting, William Minot, Jr., and Lawrence Minot, trustees of the Boston Ground Rent Trust to the Merchants' Building Association, a corporation, said lease being dated the 11th day of April, 1890, and recorded on the 22d day of April, 1890, in the office of the recorder of deeds of Jackson county, at Kansas City, Missouri, in book B 423 at pages 184 and following, together with all the buildings and improvements situated upon all of said real estate and constituting a part thereof. And also to acquire and hold the leasehold interest of the Emery, Bird, Thayer Dry Goods Company in the following described real estate situated in Kansas City, Jackson county, Missouri, to wit: Lot numbered seventy-five (75) in Swope's addition to the city of Kansas (now Kansas City) Missouri. Said leasehold interest being the unexpired term of a lease of said last described premises from Mary S. Dickerson to said Emery, Bird, Thayer Dry Goods Company dated the first day of March, 1905, and recorded on the 4th day of March, 1905, in said office of the recorder of deeds of said Jackson county, Missouri, at Kansas City, in book B 961 at page 22, as amended by an agreement between said Mary S. Dickerson and said Emery, Bird, Thayer Dry Goods Company, dated the 14th day of March, 1905, and recorded in said office of said recorder of deeds on the 9th day of January, 1908, in book B 1107 at page 301, and as again amended and extended by another agreement between said Mary S. Dickerson and said Emery, Bird, Thayer Dry Goods Company, dated the 10th day of April, 1905, and recorded in said office of said recorder of deeds on the 9th day of January, 1908, in book B 1154 at page 66. And also to acquire and hold the leasehold interest of said Emery, Bird, Thayer Dry Goods Company in said last described real estate under and by virtue of a certain other lease thereof to it from said Mary S. Dickerson dated the 7th day of October, 1907, and recorded in said office of said recorder of deeds on the 9th day of January, 1908, in book B 1108 at page 450.

"(2) To carry out and perform all the terms, provisions, covenants and agreements contained in said leases mentioned in paragraph '1' aforesaid, to be kept, carried out and performed by the lessee and, its successors and assigns, and for this purpose to make such contracts, to do such acts and incur such indebtedness as may be necessary and proper therefor; to enforce the performance of all the terms, provisions, covenants and agreements of said leases to be kept, carried out and performed by the lessors therein and their successors and assigns, and for this purpose to make such contracts, to do such acts and institute and prosecute such suits as may be necessary and proper therefor.

"(3) To lease the property described in paragraph '1' aforesaid and every part thereof to the Emery, Bird, Thayer Dry Goods Company for such time, upon such terms and for such rental as may be from time to time mutually agreed upon, provided, however, that any such lease shall be made upon such terms and for such rentals as will produce for the benefit of the stockholders of this corporation a net dividend upon the entire capital stock of this corporation of at least six per cent. per annum, free and clear of all costs, charges and expenses of every kind whatsoever.

"(4) To sell, assign, transfer and convey the property described in paragraph '1' as aforesaid, and every and any part thereof, at such times, to such persons and on such terms and at such prices as may be from time to time determined by an affirmative vote of not less than two-thirds of the entire capital stock of this corporation, cast at a stockholders' meeting legally held."

At the time of the organization and incorporation of plaintiff, as aforesaid, a certain other corporation, to wit, Emery, Bird, Thayer Dry Goods Company, was the owner of and in possession of the real estate, leasehold interests, buildings, and improvements and all the property, described in said articles of association of plaintiff, and set out as aforesaid. Said Emery, Bird, Thayer Dry Goods Company was and still is a corporation organized under the laws of the state of Missouri, and having its office and principal

place of business at said Kansas City, Mo., and engaged in the business of buying and, selling goods, wares, and merchandise in its department store in said Kansas City, and at the time of the incorporation of plaintiff was using and occupying said property for the purposes of its said business.

On the 1st day of February, 1908, said Emery, Bird, Thayer Dry Goods Company, in consideration of the sum of $1 and other valuable considerations to it paid by plaintiff herein, granted, bargained, and sold, conveyed, and confirmed unto the plaintiff herein all its said property, real estate, buildings, and improvements, above described, by a warranty deed, a copy of which is annexed to and filed with the plaintiff's petition and marked "Exhibit B." After the execution of said warranty deed and conveyance to plaintiff of said property by said Emery, Bird, Thayer Dry Goods Company, as aforesaid, and on, to wit, the 1st day of February, 1908, plaintiff demised and let all of said property, real estate, and improvements unto said Emery, Bird, Thayer Dry Goods Company for a term of twenty-five (25) years, beginning on the 1st day of January, 1908, and ending on the 1st day of January, 1933, at and for the annual rental of $108,000, payable in equal quarterly installments on or before the 1st days of January, April, July, and October of each and every year of said term, and for the further consideration of the promise and agreement of said Emery, Bird, Thayer Dry Goods Company to pay all the taxes on all of said premises during the continuation of said lease, also to keep all the buildings on said premises fully insured in good and solvent insurance companies for the use and benefit of the plaintiff and, in its name and also to pay all the rentals and charges falling due on leasehold premises, aforesaid, and to keep and perform all the obligations and conditions contained in said original leases of said premises to be kept and performed by the lessee therein and to save harmless plaintiff from all rentals, charges, and obligations of said original leases, a copy of which lease is annexed to and filed with plaintiff's petition, and marked "Exhibit C."

Upon the execution of said lease, said Emery, Bird, Thayer Dry Goods Company in pursuance thereof and thereunder entered into the possession of all of said premises so leased to it by plaintiff, and continuously since that time hitherto has been and still is in exclusive possession thereof, performing all the terms and obligations of said lease. Said leasehold interest under said lease from John Quincy Adams et al., trustees of the Boston Ground Rent Trust, to the Merchants' Building Association, mentioned in said articles of association of plaintiff, was and is the unexpired portion of the term of 99 years, beginning on the 1st day of April, 1890, as set forth in said lease, a copy of which is annexed to and filed with plaintiff's petition, and marked "Exhibit D." Said leasehold interest, under said lease from Mary S. Dickerson, dated March 1, 1905, mentioned in said articles of association and under the agreements of modification and extension thereof, mentioned therein, was and is the unexpired portion of the term of 15 years expiring on the 1st day of March, 1920, as appears from copies of said lease, agreement of modification, and agreement of extension thereof, attached to and filed with plaintiff's petition and marked, respectively, "Exhibit E," "F," and "G." Said leasehold under the lease of said Mary S. Dickerson and said Emery, Bird, Thayer Dry Goods Company, mentioned in said articles of association under a lease dated the 7th day of October, 1907, is for a term of 69 years, beginning on the 1st day of March, 1920, and expiring on the 1st day of March, 1989, as appears from a copy of said lease, annexed to and filed with plaintiff's petition, and marked "Exhibit E."

On the 26th day of February, 1910, one C. G. Burton, the collector of United States internal revenue for the Sixth district of the state of Missouri, claiming to act under section 38 of the act of Congress entitled "An act to provide revenue, equalize duties and encourage the industries of the United States and for other purposes," approved on the 5th day of August, 1909, and claiming that plaintiff was required under the terms of said act to make return of its income for the year 1909, under the penalties in said act provided for its failure therein so to do, required plaintiff to make the

return as required by said act and in the form provided therefor. Plaintiff did on said 26th day of February, 1910, under protest, make such return showing its total income for the year 1909 under said lease from it to said Emery, Bird, Thayer Dry Goods Company in the sum of $108,000, as aforesaid. By the terms of said protest, plaintiff claimed that it was under no legal obligation whatever, to make such return or any return whatever of its net annual income for the year 1909 or to furnish any of the information called for in such return. Plaintiff further claimed in said protest that its entire income was derived solely from the rents of land and real estate belonging to it, and that for that specific reason, in addition to other reasons, it was not required to make any return of its said income and in said protest. Plaintiff further claimed that said section 38 of said act of Congress (Act Aug. 5, 1909, c. 6, 36 Stat. 112 [U. S. Comp. St. Supp. 1911, 946]) was unconstitutional and void, and that its return was made under protest and solely for the purpose of avoiding the penalties or attempted enforcement of the penalties mentioned in said act. A copy of said protest is attached to and filed with plaintiff's petition and marked "Exhibit I." The only income of plaintiff for the year 1909 was said sum of $108,000 paid to it by said Emery, Bird, Thayer Dry Goods Company as rental of the property, above described, in accordance with the terms of said lease from it to said Dry Goods Company.

On the 6th day of May, 1910, said C. G. Burton, collector as aforesaid, served upon the plaintiff notice of and demand for taxes assessed against it on its said income, a copy of which notice and demand is annexed to and filed with plaintiff's petition and marked "Exhibit J." By said notice and demand said collector notified plaintiff that it had been assessed upon its said return for the year 1909 a tax under said act of Congress in the sum of $1,030, and that said tax would become due and payable on or before the 30th day of June, 1910, and that, unless the same were paid, it would become his duty to collect the same with a penalty of 5 per centum additional and interest at the rate of 1 per centum per month. On the 28th day of June, 1910, plaintiff paid to said collector the sum of $1,030 in payment of said tax, and paid the same under protest and unwillingly and because of requirement and demand of said collector aforesaid, and to prevent proceedings to compel the payment thereof, together with interest and penalties, as set forth in said demand of said collector made on said 6th day of May, 1910, as aforesaid, and at the time of said payment notified said collector that it intended to sue for the money thereby paid, that said protest was in writing, and a copy thereof is annexed to and filed with the petition of plaintiff, and marked "Exhibit E."

On the 21st day of February, 1911, said C. G. Burton, collector as aforesaid, claiming to act under said section 38 of said act of Congress, and claiming that plaintiff was required under the terms of said act to make return of its income for the year 1910 under the penalties therein provided for its failure therein so to do, required plaintiff to make a return as required by said act and in the form provided therefor. On the 21st day of February, 1911, plaintiff did under protest make such return showing its total income for the year 1910 under said lease from it to said Emery, Bird, Thayer Dry Goods Company in the sum of $108,000, as aforesaid; that by its said protest plaintiff claimed that it was under no legal obligation whatever to make such return or any return whatever of its net annual income for said year 1910, or to furnish any of the information called for in such return, and further claimed that its entire income was derived solely from the rents of land and real estate belonging to it, and for that specific reason, in addition to other reasons, it was not required to make any return of its said income, and further claimed that said section of said act of Congress was unconstitutional and void, and that its said return was made unwillingly and under protest and solely for the purpose of avoiding the penalties or attempted enforcement of the penalties mentioned in said section 38 of said act of Congress, that said protest was in writing, and a copy thereof is annexed to and filed with plaintiff's petition, and marked "Exhibit L." The only income of plaintiff during said year 1910 was said sum of $108,000 re-

ceived by it as rental from said Emery, Bird, Thayer Dry Goods Company under said lease to said Dry Goods Company as aforesaid.

On the ——— day of March, 1911, said C. G. Burton, collector, as aforesaid, served upon plaintiff a certain notice of and demand for taxes assessed upon its said return, and thereby notified plaintiff that a special excise tax under the provision of said section 38 of said act of Congress, amounting to $1,030, had been assessed against it by the commissioner of internal revenue and transmitted to him for collection, and that said tax was due and payable on or before the 30th day of June, 1911, a copy of which said notice and demand is annexed to and filed with plaintiff's petition and marked "Exhibit M." On the 16th day of June, 1911, plaintiff paid to said collector said sum of $1,030 in payment of said tax, and paid the same under protest, and only because of the requirement of said collector and to prevent proceedings to compel collection together with interest and penalties as provided in said act. At the time of said payment, plaintiff delivered to said collector its written notice of protest to the effect that said payment was unwillingly made and under protest, and that said tax was illegal, invalid, and improperly assessed, and that said payment was made under protest, and only because of the requirements of said collector and to prevent proceedings to compel the payment thereof together with interest and penalties, and notified said collector that it intended to sue for the money thereby paid, a copy of which said notice of protest is annexed to and filed with said plaintiff's petition, and marked "Exhibit N."

After the payment of said two sums of $1,030 each aggregating the sum of $2,060, as aforesaid, to said collector of internal revenue of the United States for the Sixth district of Missouri, said collector paid the same over to the United States, the defendants in this suit, who have since retained and are now retaining the same. Said payments were made by plaintiff unwillingly and on compulsion and under duress for the purpose of avoiding the penalties provided by said act of Congress for a failure to pay the same, and also for the purpose of preventing said collector from taking steps to collect the same together with interest and penalties, as provided in said act of Congress, and from proceeding against plaintiff and its property and levying upon its property, and to prevent the collection by said collector as he was then and there threatening to do.

Plaintiff was not, at any time during the years 1909, 1910, and 1911, or any of them, and is not now, a corporation doing business in a corporate capacity within the true intent and meaning of said section 38 of said act of Congress, and was not, as a matter of fact, engaged in or doing any business in said years 1909, 1910, and 1911, or any of them, and during said years did not in fact act in any corporate capacity, except to hold the usual meetings of its stockholders for the election of directors and the usual meetings of its directors for the election of its officers and for the receipt of the rentals reserved under said lease from it to said Emery, Bird, Thayer Dry Goods Company of the property aforesaid, to wit, said sum of $108,000 yearly and the distribution of such rentals as dividends to its stockholders in accordance with its said articles of association. On the 30th day of June, 1911, plaintiff filed with said C. G. Burton, collector as aforesaid, in the form required and provided by law, and in accordance with the regulations of the Secretary of the Treasury in such cases made and provided, its claim for the refund and repayment of said taxes paid by it as aforesaid, which said claim was by said collector transmitted and submitted to the commissioner of internal revenue, and thereupon and thereby plaintiff appealed to said commissioner of internal revenue for a refund and repayment to it of said sum of $2,060, claimed by it to have been illegally and wrongfully collected from it as aforesaid. On the ——— day of July, 1911, said collector refused and rejected said claim and every part thereof, and refused to refund said sum of $2,060, or any part thereof, to plaintiff. Plaintiff's suit herein was filed on the 10th day of February, 1912, and due service thereof had upon the United States district attorney within and for the Western district of Missouri, and upon the Attorney General of the United States, as provided in the acts of Congress in such cases made and provided.

. This suit is brought under the provisions of the act of Congress approved March 3, 1887 (chapter 359, 24 Statutes at Large, p. 505), commonly called the "Tucker Act," as amended by the provisions of chapter 231, subc. 2, § 24, par. 20, and subchapter 14, § 297, par. 7, of the act of Congress entitled "An act to codify, revise and amend the laws relating to the judiciary" approved March 3, 1911 (36 Statutes at Large, pages 1087, 1168); that this suit is brought by the plaintiff against the United States of America, and not against the collector of internal revenue.

### Conclusions of Law.

Plaintiff was not at any time during the years 1909, 1910, and 1911, or any of them, and is not now, a corporation required by the said act of Congress to make return of its income under said act of Congress, and was not and is not liable to be assessed or compelled to pay said tax so assessed upon and levied against it during said years or any of them. Plaintiff was not during the years 1909, 1910, and 1911, or any of them, and is not now, doing business in a corporate capacity within the true intent and meaning of said section 38 of said act of Congress. Taxes for the years 1909 and 1910 were illegally assessed against and levied upon plaintiff, and it is entitled to recover the same in this suit.

Smart & Strother, of Kansas City, Mo., for plaintiff.
Leslie J. Lyons, U. S. Atty., of Kansas City, Mo.

VAN VALKENBURGH, District Judge (after stating the facts as above.) Briefly recapitulated, the questions presented are these: First. Can the plaintiff bring suit to recover taxes, alleged to have been wrongfully assessed and collected under the Corporation Tax Law, directly against the United States under the Tucker Act, other requirements of law having been complied with, or is its remedy against the Collector of Internal Revenue by whom the assessment and collection were made? Second. The Emery, Bird, Thayer Dry Goods Company, a business corporation of Kansas City, Mo., originally was the owner of and was in possession of the real estate, leasehold interests, buildings, and improvements upon and in which its business was conducted. On or about February 1, 1908, 18 months before the passage of the Corporation Excise Tax Law, it was decided by its stockholders and officers to transfer these holdings to a corporation to be organized under the laws of the state of Missouri as the Emery, Bird, Thayer Realty Company, the plaintiff in this action. This corporation was organized for the specific purpose of holding such real estate and leasehold interests, buildings, and improvements and of leasing the same to the Emery, Bird, Thayer Dry Goods Company, and no other, for a long period, the latter company under the lease to have the entire management and assume all responsibilities respecting such properties. The stockholders of the plaintiff company were to be and are substantially identical with those of the Emery, Bird, Thayer Dry Goods Company; the only exceptions being members of the families of two of the officers of the Dry Goods Company. The Realty Company thus holding the title was to retain the single duty of collecting the rentals under this lease, and pay the same as dividends to the stockholders. It also possesses under the lease the general power to enforce the terms of that lease and protect its title to the property. When the lease expires, if no renewal thereof is made,

it may, upon a sufficient vote of the stockholders, dispose of the properties, and presumably distribute the proceeds to the stockholders. This would amount to a liquidation of the affairs of the corporation, because no other powers to do business are granted by the charter. Under such circumstances, is it a corporation doing business within the meaning of the act of August 5, 1909, and subject to the excise tax therein provided?

[1] 1. The first question is no longer an open one in this jurisdiction. The precise question was before the Court of Appeals for this circuit in Christie-Street Commission Co. v. United States, 136 Fed. 326, 69 C. C. A. 464. It was there held:

"A claim to recover back internal revenue taxes illegally exacted under a misconstruction of the war revenue law of 1898 is a claim founded upon a law of Congress, within the meaning of the act of March 3, 1887, and it may be enforced by an action directly against the United States under that act, after it has been presented to the commissioner of internal revenue, whether it has received his approval or not, and whether it is an action on a contract or an action sounding in tort."

In the opinion Judge Sanborn said:

"The acts of 1855 and 1887 here under consideration mark a rational and gratifying advance in civilization and public policy, and they should be liberally construed to accomplish the benign purpose of their enactment. The theory that a nation or its government should refuse to submit its controversies with its citizens to the adjudication of impartial tribunals is but the fast receding echo of the rule that the king can do no wrong. There are few more grievous wrongs than the denial by a nation of a hearing and trial of the just claims which its citizens may have against it. There is no reason why a government should not submit its controversies with its subjects to adjudication, or why it should not itself practice that justice whose administration is the great purpose of its existence. Justice demands, and a wise public policy requires, that nations should submit themselves to the judgments of impartial tribunals, to the enforcement of their contracts and to satisfaction of their wrongs as universally as individuals. The decisions of the Supreme Court upon the specific question before us evidence a constantly increasing tendency to adopt this view."

All the decisions of the Supreme Court of the United States now urged by counsel for the government, which have any bearing upon the matter in dispute, were urged upon the attention of the Circuit Court of Appeals by the writer of this opinion, then counsel for the United States, and received full consideration. To seek a decision in conflict with the doctrine announced in Christie-Street Commission Co. v. United States, supra, is to ask this court to disregard the deliberate judgment of a superior court of controlling authority. Apart from all other considerations, such a policy would lead to instability and endless confusion, and is indefensible from every point of view. Furthermore, the doctrine announced in that case commends itself to my judgment. I am unable to perceive either justice or advantage, in the procedure upon which the government insists.

[2, 3] 2. It remains to be considered whether the plaintiff is a corporation by a proper construction of the act made subject to pay annually a special excise tax. Section 38 provides:

"That every corporation * * * organized for profit and having a capital stock represented by shares * * * organized under the laws of the

United States or of any state or territory of the United States * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year."

Subject to exceptions enumerated:

"Second. Such net income shall be ascertained by deducting from the gross amount of the income of such corporation, * * * received within the year from all sources, (first) all the ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and properties, including all charges such as rentals or franchise payments, required to be made as a condition to the continued use or possession of property."

This act has been exhaustively and minutely considered and construed by the Supreme Court of the United States in the cases of Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, Eliot v. Freeman, 220 U. S. 178, 31 Sup. Ct. 360, 55 L. Ed. 424, and Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428. In the case first cited it was held that the tax is imposed upon the doing of business of the character described; that it is business done in a corporate capacity which is the subject-matter of the tax imposed in the act under consideration; that the requirement to pay such taxes involves the exercise of the privilege, to wit, that of doing business in such corporate capacity; that, therefore, the element of absolute and unavoidable demand is lacking. If business is not done in the manner described in the statute, no tax is payable. Thomas v. United States, 192 U. S. 363, 24 Sup. Ct. 305, 48 L. Ed. 481. On page 171 of 220 U. S., on page 357 of 31 Sup. Ct., 55 L. Ed. 389, Ann. Cas. 1912B, 1312, it was said:

"We think it is clear that corporations organized for the purpose of doing business, and actually engaged in such activities as leasing property, collecting rents, managing office buildings, making investments of profits, or leasing ore lands and collecting royalties, managing wharves, dividing profits, and in some cases investing the surplus, are engaged in business within the meaning of this statute, and in the capacity necessary to make such organizations subject to the law."

We gather from this that the corporation subject to the tax must be organized for the purpose of doing business, and, in addition thereto, must be actually engaged in such activities. The case of Eliot v. Freeman involved joint-stock companies not organized under the laws of the state. For this reason, it was held that the law did not apply.

A more specific consideration of the act, as applied to a subject such as is now before us, is disclosed in the case of Zonne v. Minneapolis Syndicate. There the corporation, as was admitted by the pleadings, was originally organized for and engaged in the business of letting stores and offices in a building owned by it, and collecting and receiving rents therefor. Subsequently it demised and let all of the tracts belonging to it to three trustees for the term of 130 years, at an annual rental of $61,000, to be paid by said lessees to said corporation. At that time the corporation caused its articles of incorporation, which had theretofore been those of a corporation organized

for profit, to be so amended as to show that the sole purpose of the corporation should be to hold the title to the property subject to the lease aforesaid, and, for the convenience of its stockholders, to receive, and to distribute among them, from time to time, the rentals that accrued under this lease, and the proceeds of any disposition of the land. Its sole function then was to collect the rents and distribute them as dividends to its stockholders, and ultimately to dispose of the property and distribute the proceeds. This is what is actually done by the plaintiff corporation in this case. Defendant contends that because its articles of incorporation, which were originally those of a corporation organized for profit, have not been amended, as was done in the Zonne Case, it necessarily remains a corporation organized for and engaged in business, and is therefore subject to the tax. In the Minneapolis Syndicate Case the court said:

"As we have construed the Corporation Tax Law (Flint v. Stone Tracy Co., supra, at page 107 of 220 U. S., at page 342 of 31 Sup. Ct., 55 L. Ed. 389, Ann. Cas. 1912B, 1312), it provides for an excise upon the carrying on or doing of business in a corporate capacity. * * * The corporation involved in the present case, as originally organized and owning and renting an office building, was doing business within the meaning of the statute as we have construed it. Upon the record now presented we are of opinion that the Minneapolis Syndicate, after the demise of the property and reorganization of the corporation, was not engaged in doing business within the meaning of the act. It had wholly parted with control and management of the property. Its sole authority was to hold the title subject to the lease for 130 years, to receive and distribute the rentals which might accrue under the terms of the lease, or the proceeds of any sale of the land if it should be sold. The corporation had practically gone out of business in connection with the property and had disqualified itself by the terms of reorganization from any activity in respect to it. We are of opinion that the corporation was not doing business in such wise as to make it subject to the tax imposed by the act of 1909." Zonne v. Minneapolis Syndicate, supra, at pages 190, 191, of 220 U. S., at page 362 of 31 Sup. Ct., 55 L. Ed. 428.

The only difference between that case and the case at bar which could possibly militate to the disadvantage of the plaintiff herein is that here there has been no act of reorganization of the corporation by the terms of which it has disqualified itself from any activity in respect to the property. But by its lease it has done so as effectively as did the Minneapolis Syndicate. There the property was leased to trustees at a fixed sum and for a long period. In each case the lessor has wholly parted with the control and management of the property; provided, of course, the terms of the lease are observed. In the Minneapolis case the corporation was originally engaged in the business of letting stores and offices in a building owned by it, but indiscriminately to various tenants after the usual manner of renting such a property. Here, the corporation was specifically organized for the purpose merely of holding the title to the property, and of renting it to a specific tenant. I am of opinion that this does not disclose an organization for business purposes as contemplated by the act. True, the corporation was organized under the chapter relating to business and manufacturing corporations, but that is because this is the only chapter applicable to such a corporate existence. Its purposes may well

satisfy the requirements of the Missouri statute, without bringing them within the purview of the act of Congress. The power of ultimate sale and distribution of proceeds is alike in both cases, as is the express or implied power as title holder to enforce the provisions of the lease.

I cannot believe that the act of reorganization and amendment of charter was controlling in the Zonne Case. It was present, and was recited as adding additional force to the construction there adopted. But, as we have seen, two things must concur to render a corporation subject to this tax. It must be organized for the purpose of doing business, and it must be actually engaged in that business. The Minneapolis Syndicate after the demise of the property to the trustees— a single tenant— was not engaged in doing business within the meaning of the act. It had wholly parted with control and management of the property. In this case the Realty Company was organized to do no more than this, and, in any event, it is not actively engaged in doing more. Under the terms of this charter reorganization is unnecessary, and, if effected, would only tend to emphasize a situation already existing. As stated by the learned district attorney in his brief, "plaintiff has arranged its matters in such a satisfactory and convenient manner as to relieve it during the period of this present lease from actively participating in the management of the property in question and from being annoyed with the usual inconveniences and problems that are involved in the management and control of property generally." It has, in fact, parted entirely with the management and control of this property during the life of the lease. Its charter gives it no power to acquire other property, nor to deal in property generally. It gives it no power to lease to any one but this single tenant, nor to engage in the business of leasing property generally. It gives it no power to operate upon the expiration of this lease, in default of a renewal, but simply to dispose of the property by sale and distribute the proceeds. And even though a corporation be deemed to have been organized for business purposes, if it abstains from doing business, it is not subject to the tax. This entire transaction was completed long prior to the enactment of this excise tax law. Its object was not to defraud the government of revenue. The Emery, Bird, Thayer Dry Goods Company, a corporation, pays excise taxes upon the net income of its business. The government is not defrauded of its revenue. The net income of the Dry Goods Company is entitled to credit for all the ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and properties, including all charges such as rentals required to be made as a condition to the continued use or possession of property. If the title were held otherwise, the Dry Goods Company, which is the only active business corporation, would be entitled to such a deduction. This is evidently an arrangement merely for the sake of convenience in order that the capital of the dry goods corporation may not be withdrawn from its business operations and invested in lands, leasehold interests, and appurtenant buildings. The stockholders of the Dry Goods Company really own this property.

For convenience they hold it through this corporate agency. The rental paid is the income or return upon this investment.

[4] Held in the names of the individuals, the property could not be directly taxed; held in the corporate name it is taxed, if at all, only by virtue of the form of its ownership. This cannot be done.

[5] Taxes on real estate being indisputably direct taxes, taxes on the rents or income of real estate are equally direct taxes. Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759; s. c., 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108. The language in these opinions "was but a statement that a tax which was in itself direct, because imposed upon property solely by reason of its ownership, could not be changed by affixing to it the qualifications of excise duty." Flint v. Stone Tracy Co., supra, at page 149 of 220 U. S., at page 348 of 31 Sup. Ct., 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

I am unable to distinguish this case in principle from that of Zonne v. Minneapolis Syndicate, supra, and it follows that the finding and judgment must be for the plaintiff.