CHRISTIE–STREET COMMISSION CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1905.)

No. 2,094.

1. INTERNAL REVENUE—TAXATION—RECOVERY BACK—CONSTRUCTION OF STATUTES.

A claim to recover back internal taxes illegally exacted under a misconstruction of the war revenue law of 1898 (Act June 27, 1898, c. 503, § 1, 30 Stat. 494 [U. S. Comp. St. 1901, p. 752]) is a claim founded upon a law of Congress, within the meaning of the act of March 3, 1887 (chapter 359, § 1, 24 Stat. 505, U. S. Comp. St. p. 752) and it may be enforced by an action directly against the United States under that act, after it has been presented to the Commissioner of Internal Revenue, whether it has received his approval or not, and whether it is an action on a contract or an action sounding in tort.

2. SAME—SPECIAL AND GENERAL LAW STAND TOGETHER UNLESS CLEARLY REPUGNANT.

Specific legislation upon a single subject and a general law relative to that and other subjects must stand together, unless clearly repugnant,

the one as the law of the particular subject, and the other as the general law of the land.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 235–237.]

3. SAME—LIMITATION OF SECTION 3227, REV. ST. [U. S. COMP. ST. 1901, P. 2089], NOT REPEALED BY THE ACT OF 1887.

The limitation of two years prescribed by section 3227 of the Revised Statutes [U. S. Comp. St. 1901, p. 2089] for the commencement of actions to recover back internal taxes illegally exacted is not inconsistent with, and is not repealed by, the act of March 3, 1887 (chapter 359, § 1, 24 Stat. 505 [U. S. Comp. St. 1901, p. 752]), which provides that no suits shall be allowed under that law unless they are brought within six years after the causes of action respectively accrue.

4. LIMITATION—ACTION TO RECOVER TAXES BARRED IN TWO YEARS.

An action against the United States upon a claim to recover back internal taxes illegally collected, which has been presented to, but has not been approved by, the Commissioner of Internal Revenue, is barred by section 3227, Rev. St. [U. S. Comp. St. 1901, p. 2089], two years after the cause of action accrues.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Western District of Missouri.

For opinion below, see 129 Fed. 506.

On November 30, 1902, the plaintiff, a corporation engaged in the business of dealing in stocks, bonds, grain, provisions, and merchandise, filed a complaint against the United States in the Circuit Court of the Western District of Missouri to recover back $4,811.76, which it alleged the collector of internal revenue had unlawfully exacted from it, against its protest, by threats and duress, between July 1, 1898, and August 15, 1899, under a misconstruction of the act of June 13, 1898, "to provide ways and means to meet war expenditures and for other purposes." 30 Stat. 448, c. 448, U. S. Comp. St. 1901, p. 2286. The plaintiff also averred that the Commissioner of Internal Revenue subsequently decided that the moneys thus collected had been erroneously taken; that he agreed to repay them; that thereupon, on December 9, 1899, the plaintiff presented its claim to him for the repayment of the moneys, but the Commissioner never either allowed or disallowed the claim. A demurrer to this complaint was sustained, and the action was dismissed on the ground that it was an action sounding in tort, and also that, if it was an action upon a contract, it was barred by the limitation of two years fixed by Act June 6, 1872; c. 315, § 14, 17 Stat. 257, Rev. St. § 3227, 2 U. S. Comp. St. 1901, p. 2089.

Jas. H. Harkless (Chas. S. Crysler and Clifford Histed, on the brief), for plaintiff in error.

A. S. Van Valkenburg (Wm. Warner, on the brief), for the United States.

Before SANBORN and HOOK, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The case presents two questions: May one whose claim for a repayment of internal taxes illegally collected has been presented to, but has not been allowed by, the Commissioner of Internal Revenue (section 3226, Rev. St., 2 U. S. Comp. St. 1901, p. 2088) maintain an action against the United States to recover these taxes under the act of

March 3, 1887 (24 Stat. 505, c. 359, 1 U. S. Comp. St. 1901, pp. 752, 753)? If so, does the limitation of two years fixed by section 3227, Rev. St., U. S. Comp. St. 1901, p. 2089, or the limitation of six years provided by section 1 of the act of 1887, fix the time within which the action may be successfully brought?

Sections 3220, 3226, 3227, Rev. St., U. S. Comp. St. 1901, pp. 2086, 2088, 2089, are a part of the system of laws enacted by Congress for the collection of the taxes imposed to obtain the internal revenue of the government, and to adjust the claims for excessive payments exacted by the officers of the nation. By these sections the Commissioner of Internal Revenue is authorized to—

"Pay back all taxes erroneously or illegally assessed or collected * * * also to repay to any collector or deputy collector the full amount of such sums of money as may be recovered against him in any court, for any internal taxes collected by him." Section 3220.

They also provide that:

"No suit shall be maintained in any court for the recovery of any internal tax alleged to have been erroneously assessed or collected * * * · until appeal shall have been duly made to the Commissioner of Internal Revenue * * * and a decision of the Commissioner has been had therein: provided: that if such decision is delayed more than six months from the date of such appeal, then the said suit may be brought, without first having a decision of the Commissioner at any time within the period limited in the next section." Section 3226.

Section 3227 declares that:

"No suit or proceeding for the recovery of an internal tax alleged to have been erroneously or illegally assessed or collected * * * shall be maintained in any court unless the same is brought within two years next after the cause of action accrued."

The act of March 3, 1887, was conceived and passed with no special reference to claims for taxes illegally collected for revenue purposes, but to authorize the adjudication of four general classes of claims against the United States in the Court of Claims and in the Circuit and District Courts. It gave to those courts jurisdiction of—

"All claims (1) founded upon the Constitution of the United States or any law of Congress, except for pensions; (2) or upon any regulation of an executive department; (3) or upon any contract, express or implied, with the government of the United States; (4) or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity or admiralty, if the United States were suable." Chapter 359, § 1, 24 Stat. 505, 1 U. S. Comp. St. 1901, p. 752.

It is conceded on all sides that, if this action can be sustained at all, it is because it is of the first class, and that its maintenance is conditioned by the true answer to the inquiry whether or not it is "founded upon any law of Congress." Counsel for the defendant argue that it is an action for wrongfully exacting from the plaintiff moneys which it was not legally required to pay, in violation of the general rule which forbids the taking of property without right or compensation; that it has no relation or reference to the revenue law of 1898, but that it is an action sounding in tort; and that the proposition that it is founded upon any law of Congress is without authority or reason to

support it.   In support of this view they call attention to the fact that the act of February 24, 1855 (10 Stat. 612), granted to the Court of Claims the same jurisdiction over every cause of action founded upon any law of Congress which is vested in that court and in the Circuit and District Courts of the United States by the act of 1887, and to the earlier decisions of the Supreme Court to the effect that under this statute, and under the provisions of sections 3220–3228, Rev. St., U. S. Comp. St. 1901, pp. 2086–2089, actions for taxes erroneously collected could be maintained against the United States only when the claims for them had been allowed by the Commissioner (U. S. v. Kaufman, 96 U. S. 567, 569, 24 L. Ed. 792), while, in cases in which the Commissioner had refused or neglected to approve the claims, the only remedy was an action against the collector for the tortious taking of the money. U. S. v. Savings Bank, 104 U. S. 728, 734, 26 L. Ed. 908.   A careful examination of the opinions in these cases, however, discloses the fact that they rest on the distinction between actions ex contractu and actions ex delicto, and upon the theory that the allowance of a claim by the Commissioner constitutes a meeting of the minds of the nation and the claimant, and thus raises the implication of a contract, upon which a cause of action may be maintained, while a refusal or a neglect of the Commissioner to approve the claim raises no such implication, and leaves the action one sounding in tort.   The opinions in the authorities here cited fail to consider the real question in this case— whether such claims are of the first class specified in the acts of 1855 and 1887, of the class of claims founded on the Constitution or upon a law of Congress—and are devoted exclusively to the discussion of the issue whether or not they fall within the third class, in the class of claims founded upon any contract, express or implied, with the government.

The analogous rulings that an action may be maintained against the United States for property which it takes without claim or color of title, because the law implies a contract to return it or to pay its value (U. S. v. Great Falls Mfg. Co., 112 U. S. 645, 5 Sup. Ct. 306, 28 L. Ed. 846; U. S. v. Lynah, 188 U. S. 445, 23 Sup. Ct. 349, 47 L. Ed. 539), while the seizure of property to which it claims title will not sustain such an action, because a taking of this nature raises no such implication (Langford v. U. S., 101 U. S. 341, 25 L. Ed. 1010; Hill v. U. S., 149 U. S. 593, 13 Sup. Ct. 1011, 37 L. Ed. 862; Schillinger v. U. S., 155 U. S. 163, 15 Sup. Ct. 85, 39 L. Ed. 108), are of the same character. They determine only whether the claims upon which the actions there under consideration were based were founded upon contracts with the government, and fail to discuss or decide what claims are founded upon the laws of Congress.

The acts of 1855 and 1887 here under consideration mark a rational and gratifying advance in civilization and public policy, and they should be liberally construed to accomplish the benign purpose of their enactment.   The theory that a nation or its government should refuse to submit its controversies with its citizens to the adjudication of impartial tribunals is but the fast receding echo of the rule that the King can do no wrong.   There are few more grievous wrongs than the denial by a nation of a hearing and trial of the just claims which its citi-

zens may have against it. There is no reason why a government should not submit its controversies with its subjects to adjudication, or why it should not itself practice that justice whose administration is the great purpose of its existence. Justice demands, and a wise public policy requires, that nations should submit themselves to the judgments of impartial tribunals, to the enforcement of their contracts and to satisfaction of their wrongs, as universally as individuals.

The decisions of the Supreme Court upon the specific question before us evidence a constantly increasing tendency to adopt this view.

In the year 1868, in the case of Nichols v. U. S., 7 Wall. 122, 131, 19 L. Ed. 125, that court held "that cases arising under the revenue laws were not within the jurisdiction of the Court of Claims."

In the year 1877, in U. S. v. Kaufman, 96 U. S. 567, 24 L. Ed. 792, it held that its declaration in the Nichols Case was too broad, and that the act of 1855 gave the Court of Claims jurisdiction of an action upon a claim for taxes illegally collected, which had been allowed by the Commissioner of Internal Revenue.

In 1881, in U. S. v. Savings Bank, 104 U. S. 728, 734, 26 L. Ed. 908, it affirmed this decision.

In the year 1900, Dooley, Smith & Co. had brought an action against the United States in the Southern District of New York to recover back certain taxes illegally exacted from them upon merchandise imported into Porto Rico from New York. Their claim had not been allowed by any officer of the government, so that there was no contract, express or implied, to pay it. They were met, as is the plaintiff in the case at bar, by the contention that theirs was an action "sounding in tort," and that none but actions upon contracts could be maintained under the act of 1887. The Supreme Court first again discarded the decision in the Nichols Case, then reviewed the authorities upon actions founded upon contracts and upon torts, and discussed the question "whether any claim sounding in tort can be prosecuted in the Court of Claims, notwithstanding the words 'not sounding in tort,' in the Tucker act, are apparently limited to claims for damages, liquidated or unliquidated," and finally announced its decision in these words:

"In the cases under consideration the argument is made that the money was tortiously exacted, that the alternative of payment to the collector was a seizure and sale of the merchandise for the nonpayment of duties, and that it mattered not that at common law an action for money had and received would have lain against the collector to recover them back. But whether the exactions of these duties were tortious or not—whether it was within the power of the importer to waive the tort, and bring suit in the Court of Claims for money had and received, as upon an implied contract of the United States to refund the money, in case it was illegally exacted—we think the case is one within the first class of cases specified in the Tucker act, of claims founded upon a law of Congress, namely, a revenue law, in respect to which class of cases the jurisdiction of the Court of Claims, under the Tucker act, has been repeatedly sustained."

In the year 1903, in the case of Spreckels Sugar Refining Co. v. McClain, 192 U. S. 397, 406, 407, 24 Sup. Ct. 376, 378, 48 L. Ed. 496, that court said of an action against the collector of internal revenue to recover taxes illegally exacted:

"This suit was cognizable by the Circuit Court, under the judiciary act of 1887-88, as one arising under both the Constitution and the laws of the United

States.  25 Stat. 433, c. 866.  It arose under the Constitution, because the plaintiff's cause of action, as disclosed in its statement of demand, has its sanction in that instrument, if it be true, as alleged, that the act of 1898, under which the defendant proceeded when collecting the taxes in question, is repugnant to the Constitution.  And it arose under the laws of the United States because it arose under a statute providing for internal revenue."

It is said that there is a wide distinction between a claim which arises under, and one which is founded upon, a Constitution or a law.  But after patient deliberation this distinction proves too subtile and elusive for the density of our perception.  A claim is both founded upon, and it arises under, a provision of a Constitution or of a law which conditions and determines its validity.  Nor does the argument persuade that the claim in the Dooley Case was founded upon the Constitution because the duties collected were not uniform, as that instrument required them to be, while the claim at bar is not founded on the revenue law of 1898, notwithstanding the fact that the taxes which the government collected from the plaintiff were exacted by virtue of that law, and the misconstruction of it by its officers.  In each case the United States exacted moneys without right, and in violation of the general rule that the property of the citizen may not be taken without legal authority.  In each case the taking was tortious.  In one case the claim was founded upon the Constitution and upon the war revenue law of 1898.  In the other it was founded upon that law alone.  The acts of 1855 and 1887, however, vest in the courts as complete jurisdiction of a cause of action upon a claim founded upon a law of Congress as upon one founded upon the Constitution and the law.

The demurrer in the case at bar admits that the taxes which are the subject of this action were illegally exacted from the plaintiff by virtue of the war revenue law of 1898, misconstrued by the collector of internal revenue.  The claim to recover back these taxes was therefore founded upon, and its validity is conditioned by, that law.  The demurrer also admits that this claim was duly presented to the Commissioner of Internal Revenue for allowance and payment in accordance with the provisions of sections 3220 and 3226— a sine qua non of an actionable claim.  It is therefore also founded upon the law of Congress evidenced by these sections, since a failure to comply with them would destroy its validity.  Jurisdiction was granted to the courts over the action upon this claim, founded as it is upon these laws of Congress, by the act of 1887.  The Commissioner of Internal Revenue was powerless to make or modify this congressional grant, or to oust the jurisdiction of the court either by his inaction or by his rejection of the claim, and plenary power was vested in the Circuit Court to hear and determine it upon its merits.

A claim to recover back internal taxes illegally exacted under a misconstruction of the war revenue law of 1898 is a claim founded upon a law of Congress, within the true meaning of the act of March 3, 1887; and it may be enforced by an action directly against the United States under that act after it has been presented to the Commissioner of Internal Revenue, whether it has received his approval or not, and whether it is an action on a contract or an action sounding in tort.

Is the time for the commencement of such an action to enforce a claim to recover back internal taxes illegally collected limited by the two years fixed by section 3227 of the Revised Statutes [U. S. Comp. St. 1901, p. 2089], or does the time extend to the six years prescribed by section 1 of the act of 1887? Counsel for the plaintiff in error argue that the time allowed is six years (1) because the act of 1887 prescribed this period, and by its terms repealed all laws and parts of laws inconsistent with its provisions (24 Stat. 505, §§ 1 to 16); and (2) because, as he claims, prior to the passage of the act of 1887 the limitation declared by section 3227 governed actions upon claims not approved by the Commissioner only, and had no application to actions directly against the United States upon claims approved by the Commissioner, and the act of 1887 added to the actions maintainable against the United States which were thus exempt from this limitation actions upon claims which had not been approved by the Commissioner and in this way brought the action at bar within the exemption. When the act of 1887 was passed there was, and had been for many years, a code of laws which prescribed the rights and duties of the officers of the United States and of its citizens in the assessment, ascertainment, and collection of the internal revenue requisite to support the government, and in the adjustment of claims for excessive payments. Sections 3220, 3226, and 3227 constituted a part of this system of laws which related to this specific subject. They prescribed and limited the means by which one might recover back from the United States internal taxes which had been illegally exacted from him. Section 3227 provided that no suit or proceeding for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected should be maintained in any court unless it was brought within two years next after the cause of action accrued. The adjustment and collection of taxes and of claims for excessive payments on account of such assessments was not the primary subject of the act of 1887. That act was a general law passed for the purpose of conferring jurisdiction of actions upon numerous classes of claims upon certain courts of the United States. It contained a limitation in these words:

"Provided that no suit against the government of the United States shall be allowed under this act unless the same shall have been brought within six years after the right accrued for which the claim is made." U. S. Comp. St. 1901, p. 752, § 1.

Section 16 of the act provides that all laws and parts of laws inconsistent with its provisions are repealed.

If Congress had affirmatively declared by this law that all actions allowed under it might be commenced at any time within six years after their respective causes accrued, there might be some chance for an argument that there was an inconsistency between the limitation of this act and that of section 3227 which would work a repeal of the latter. But there is certainly no repugnancy between a general law to the effect that no action upon any of several classes of claims shall be brought after six years from the accrual of the cause of action, and a statute that no action upon any of a specific

class of these claims shall be sustained unless it is commenced within two years of the time when the cause of action arose; and, as there is no inconsistency between the two limitations, the act of 1887 neither repealed nor modified the provision of section 3227. This conclusion is in accordance with familar rules of construction. Specific legislation upon a particular subject is not affected by a general law upon the same subject unless it clearly appears that the provisions of the two laws are so repugnant that the legislators must have intended by the later to modify or repeal the earlier act. The special act and the general law must stand together, the one as the law of the particular subject, and the other as the general law of the land.   Gowen v. Harley, 56 Fed. 973, 978, 979, 6 C. C. A. 190, 196; State v. Stoll, 17 Wall. 425, 436, 21 L. Ed. 650; Board of Commissioners of Seward County v. Ætna Life Ins. Co., 32 C. C. A. 585, 590, 90 Fed. 222, 227; The Distilled Spirits, 11 Wall. 356, 365, 20 L. Ed. 167; Henderson's Tobacco, 11 Wall. 652, 658, 20 L. Ed. 235.   "All statutes in pari materia are to be read and construed together, as if they formed part of the same statute, and were enacted at the same time."   Potter, Dwar. St. 145.   When the two limitations are read in accordance with the latter rule, all doubt that they are both in force and that they are consistent with each other is instantly dispelled.

Nor is the second contention of counsel upon this question more persuasive.   The premises upon which they base their argument are unsound, and their conclusion is inadmissible.   From the passage of the act of 1855 until the present day, actions upon claims for internal taxes illegally collected through misinterpretation of the revenue law have been maintainable directly against the United States after their presentation to the Commissioner, whether the claims were approved by him or not, because these claims were founded upon a law of Congress.   Dooley v. U. S., 182 U. S. 222, 224, 226, 228, 21 Sup. Ct. 762, 45 L. Ed. 1074.   Since the year 1872 the time within which such actions could be successfully brought has been limited to two years after the respective causes of action accrued.   Act June 6, 1872, c. 315, § 14, 17 Stat. 257; section 3227, Rev. St., 2 U. S. Comp. St. 1901, p. 2089.   This class of actions, the class founded on a law of Congress, was not enlarged by the act of 1887, but it remained bounded by the same limits and conditioned by the same words after as before the passage of that act.   The action in hand is one of this class.   It rests upon a claim founded on a law of Congress, which was presented to the Commissioner of Internal Revenue pursuant to the provisions of section 3226.   It is an action directly against the United States, and the logical and unavoidable conclusion is that it was barred by the limitation of section 3227, because it was not commenced until more than two years after the cause of action it presents accrued.

The judgment below must accordingly be affirmed, and it is so ordered.