## PRIDDY v. THOMPSON.

### (Circuit Court of Appeals, Eighth Circuit. April 25, 1913.)

### No. 3,830.

### *(Syllabus by the Court.)*

**1. INDIANS (§ 15*)—ALLOTMENT TO MINOR—RESTRICTIONS ON ALIENATION—REMOVAL.**

The restrictions on the alienation of their allotments by Creek minors imposed by the Creek agreements and acts of Congress were not subject to removal or modification, either in duration or effect, in March, 1908, by decrees of the district courts of Oklahoma, pursuant to section 4955a, Snyder's Comp. Laws of Oklahoma, 1909, that such minors might transact general or specific business, or make general or specific contracts or conveyances with the same effect as if they were of age. That law of the state of Oklahoma was inapplicable to such restrictions and to the rights of such minors and of their grantees.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. § 15.*]

**2. STATUTES (§ 162*)—CONSTRUCTION—GENERAL AND SPECIAL.**

Specific legislation upon a particular subject is not affected by a general law upon the same subject unless it clearly appears that the provisions of the two laws are so repugnant that the legislators must have intended by the later to modify or repeal the earlier legislation. The special act and the general law must stand together, the one as the law of the particular subject and the other as the general law of the land.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 235–237; Dec. Dig. § 162.*]

**3. MINES AND MINERALS (§ 81*)—EJECTMENT (§ 9*)—RIGHT TO MAINTAIN—OIL AND GAS LEASE.**

A grantee who has never been in possession, under a lease of the oil and gas in a specific tract of land, of the right to prospect for, extract, and appropriate them and of the right to occupy and use so much of the surface of the land only as may be necessary to find and remove the oil

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and gas, may not maintain ejectment thereon, because the lease grants no corporeal interest or hereditament.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 211; Dec. Dig. § 81;* Ejectment, Cent. Dig. §§ 16–29; Dec. Dig. § 9.*]

4. MINES AND MINERALS (§ 73*)—OIL AND GAS LEASE—OWNERSHIP—NATURE OF GRANT.

Oil and gas in the earth are, unlike ore and coal, fugacious and incapable of ownership distinct from the land, and a grant of the oil and gas in a tract of land is a grant of that part of the oil and gas therein which the grantee may find and capture, no title vests until the oil or gas is reduced to possession by extracting the same from the earth, and hence the lease is a grant of an incorporeal hereditament.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 201, 210; Dec. Dig. § 73.*]

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action by Emerson Priddy against W. A. Thompson. Judgment for defendant, and plaintiff brings error. Affirmed.

Haskell B. Talley, of Tulsa, Okl., for plaintiff in error.

C. L. Thomas and George S. Ramsey, both of Muskogee, Okl., for defendant in error.

Before SANBORN, Circuit Judge, and Wm. H. MUNGER and TRIEBER, District Judges.

SANBORN, Circuit Judge. This writ presents two questions: Had a district court of the state of Oklahoma on March 2, 1908, jurisdiction to avoid, or to change in effect or duration, the restriction upon the alienation of the allotted homestead of a Creek minor, by means of a decree pursuant to section 4955a of Snyder's Compiled Laws of Oklahoma 1909, that the rights of majority concerning contracts and the leasing of his allotment were conferred upon him; and may a lessee of the oil and gas deposits of a certain tract of land, of the right to prospect for, extract, and use them, and of the right to occupy so much only of the surface of the land as may be reasonably necessary to carry on the work of finding, extracting and removing the oil and natural gas therefrom, who has never been in possession of the land, sustain an action of ejectment therefor against a defendant in possession of the property? The court below answered both these questions in the negative and dismissed the action of ejectment which had been brought by the plaintiff, an assignee of an oil and gas lease of his homestead allotment made by Fred Saulsbury, a Creek freedman, on March 2, 1908, when he was only 19 years of age.

[1] There was a statute of the territory of Oklahoma enacted in 1895 (Laws 1895, c. 37, art. 2) to the effect that the district courts of its counties might, by decree, empower any resident of the territory under the age of 21 years to transact business in general and to transact any business specified with the same effect as if the business were done by a person above the age of 21 years. Snyder's Compiled Laws of Oklahoma, 1909, § 4955a. Saulsbury was a citizen of the Indian Territory prior to November 16, 1907, when that territory became a

part of the state of Oklahoma upon its admission to the Union. The enabling act of that state approved June 16, 1906 (34 Stat. c. 3335, § 13, p. 275), and section 2 of the schedule to the Constitution of Oklahoma (Snyder's Laws of Oklahoma 1909, p. 137), provided that all laws in force in the territory of Oklahoma should be extended, as far as applicable, over the state of Oklahoma upon its admission into the Union, and therefore over what was theretofore the Indian Territory. Saulsbury made the lease under which the plaintiff claims on March 2, 1908, by authority of a decree of one of the district courts of the state of Oklahoma rendered under the law of 1895, to the effect that although he was only 19 years of age he was empowered to make it with the same effect as if it were made by a person more than 21 years of age. The defendant contends that this law of 1895 was inapplicable to the restriction upon the alienation of the homestead allotment of this minor which was imposed by the United States and the Creek Nation, that the district court of Oklahoma was without jurisdiction to annul that restriction, or to diminish the term of its duration, and that its decree and the lease thereunder were ineffective, while the plaintiff insists that the Oklahoma law was extended over the former Indian Territory on November 16, 1907, and thereafter applied to and governed all minors in the state of Oklahoma and all their property rights including the restrictions upon the alienation of their allotments.

Saulsbury derived the title to his homestead from the United States and the Creek Nation. They had the right and the power to grant or to withhold it from him and, a fortiori, to fix the conditions and limitations on which he should hold and use it. They provided, by section 4 of the original Creek agreement approved March 1, 1901, that no allotment of any minor should be sold during his minority (31 Stat. c. 676, § 4, p. 863), and by the supplemental Creek agreement approved June 30, 1902 (32 Stat. c. 1323, § 16, p. 503), that the homestead allotment of each Creek citizen should remain nontaxable, inalienable, and free from any incumbrance whatever for 21 years from the date of the deed therefor. By the Act of May 2, 1890, 26 Stat. c. 182, § 31, p. 94, the laws contained in chapter 73 of Mansfield's Digest of the Laws of Arkansas, so far as they were not locally inapplicable or in conflict with any law of Congress, had been put in force in the Indian Territory, and section 3464 of that chapter provided that males under 21 years and females under 18 years of age should be considered minors. So that Saulsbury was a minor when these restrictions upon the alienation of his homestead allotment were imposed, and he continued to be a minor and his homestead continued to be subject to prohibitive restrictions against its alienation, or incumbrance by lease, or otherwise, on March 2, 1908, unless his allotment was relieved from those restrictions by the decree of the district court under the Oklahoma law of 1895. This conclusion has not been reached without consideration of and reflection upon the contention of counsel for the plaintiff that the decree merely fixed the status or domestic social condition of Saulsbury. But the legal and actual effect of the decree, if it was valid, was to shorten the term of restriction upon the alienation or incumbrance of this homestead fixed

by the United States and the Creek Nation two years, for it permitted him to lease his allotment when he was 19 years of age, although by the Creek agreements and congressional restrictions he was prohibited from so doing until he was 21 years of age. Was there then no method by which a minor allottee could avail himself of the benefit of a lease of his allotment? The answer is that the United States had prescribed a way and had thereby excluded all others. There was a law in Arkansas which had been in force in that state since 1869, found in section 1362 of Mansfield's Digest of the Laws of Arkansas, from which the law of Oklahoma of 1895 appears to have been copied, which authorized the circuit courts of Arkansas to empower minors to transact business as if they were of age. Congress extended many of the general laws of Arkansas over the Indian Territory, but it declined to put this law in force in that territory. On the other hand, it granted to the district courts of the Indian Territory the jurisdiction commonly given to probate courts, full, complete, and exclusive jurisdiction of the leasing of the allotments of minors and incompetents (Act of April 26, 1906, c. 1876, 34 Stat. 137, 145, 148, § 20), of the guardianship of minors and incompetents, and of the administration of estates of decedents, whether Indians, freedmen, or otherwise. Act of April 28, 1904, 33 Stat. 573, c. 1824, § 2; Morrison v. Burnette, 154 Fed. 617, 621, 83 C. C. A. 391, 395.

This, therefore, was the situation when the state of Oklahoma was admitted into the Union and the Indian Territory became a part of it. The United States had prohibited the alienation of their homestead allotments by Creek minors except by means of the probate jurisdiction over them, their allotments, and the leases thereof, which it had vested exclusively in the district courts in the Indian Territory sitting as probate courts, and it had carefully withheld from those and all other courts the power to abolish, diminish, or modify by adjudging that these minors might lease or sell their allotments as though they were adults, the restrictions upon the alienation of their lands which it had imposed. The jurisdiction over the leases and allotments of these minors, and over their guardianship, together with all the other probate jurisdiction of the district courts of the Indian Territory, was transferred to and vested, not in the district courts of the state of Oklahoma, but in the county or probate courts of that state when it was admitted into the Union on November 16, 1907. 34 Stat. 277, § 19; Act March 4, 1907, c. 2911, 34 Stat. 1287, § 3; Constitution of Oklahoma, art. 7, § 12; Snyder's Comp. Laws of Oklahoma 1909, p. 88; Schedule of the Constitution of Oklahoma, § 23; Snyder's Comp. Laws of Oklahoma 1909, p. 140; Davis v. Caruthers, 22 Okl. 323, 97 Pac. 581, 583; Eaves v. Mullen, 25 Okl. 679, 107 Pac. 433, 436; Burdett v. Burdett, 26 Okl. 416, 109 Pac. 922, 924, 925, 35 L. R. A. (N. S.) 964. In addition to the watchful preservation of its control over these allotments which the legislation which has been recited evinces, the United States had expressly reserved its power over them and the alienation and incumbrance of them by the proviso to the first section of the enabling act of Oklahoma:

"That nothing contained in the said Constitution (of Oklahoma) shall be construed to limit or impair the rights of persons or property pertaining to

the Indians of said territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this act had never been passed." 34 Stat. 267.

The United States then, at the admission of the state of Oklahoma, as we have seen, had lawfully restricted the alienation by Creek minors of their homestead allotments until they came of age, except that by an order of the proper district court in the Indian Territory sitting as a probate court in regular proceedings therefor, such minor might be authorized to lease his property. If in this state of the legislation any state or territory had enacted a law adding the exception that such allotments might be leased by the minor upon the order of one of the trial courts of that state or territory, to the effect that such minor might act, contract, or convey as though he were of age, that law would have been in conflict with the acts of Congress and void, because the United States by excluding the law of Arkansas to that effect from the general laws of that state which it put in force in the Indian Territory rendered that law and any other territorial or state law of like character inapplicable to the rights of Creek minors in their homestead allotments, and to the restrictions upon the alienation of them. And by the same mark, and also because these restrictions, their nature and duration, are within the exclusive jurisdiction and power of the United States, and may not be destroyed or modified without its clear assent, the law of Oklahoma of 1895 of the same character, set forth in section 4955a and those which follow, of the Compiled Laws of Oklahoma 1909, was inapplicable to these rights and restrictions at and after the admission of that state to the Union, and the extension of all the laws of Oklahoma, so far as applicable over the Indian Territory by the Oklahoma enabling act (34 Stat. 275), and section 2 of the Schedule to the Oklahoma Constitution (Laws 1909, p. 137), failed to subject them to it.

[2] The law of 1895 is a general law applicable to minors in the state of Oklahoma who are not governed by special legislation. The Creek agreements and the acts of Congress constitute special legislation governing the restrictions imposed by the United States upon the alienation of the allotments of minor allottees, which excludes the general law from application thereto under the familiar rule that specific legislation upon a particular subject is not affected by a general law upon the same subject, unless it clearly appears that the provisions of the two laws are so repugnant that the legislators must have intended by the later to modify or repeal the earlier act. Such does not appear to have been the intention of the legislators in this case, and under such circumstances the special legislation and the general law must stand together; the one as the law of the particular subject, and the other as the general law of the land. Christie-Street Commission Co. v. United States, 136 Fed. 326, 333, 69 C. C. A. 464, 471; Gowen v. Harley, 56 Fed. 973, 978, 979, 6 C. C. A. 190, 196; State v. Stoll, 17 Wall. 425, 436, 21 L. Ed. 650; Board of Com'rs of Seward County v. Ætna Life Ins. Co., 32 C. C. A. 585, 590, 90 Fed.

222, 227; The Distilled Spirits, 11 Wall. 356, 365, 20 L. Ed. 167; Henderson's Tobacco, 11 Wall. 652, 658, 20 L. Ed. 235.

About three months after this lease was made Congress passed the Act of May 27, 1908, c. 199, 35 Stat. 312. That act and the construction and legal effect given to it by this court and by the Supreme Court of Oklahoma are consistent with the conclusion which has been reached in this case. Truskett v. Closser, 198 Fed. 835, 839, 840, 117 C. C. A. 477; Jefferson v. Winkler, 26 Okl. 653, 110 Pac. 755, 758; Wilson v. Morton, 29 Okl. 745, 119 Pac. 213. That act was not passed, as counsel for the plaintiff contends, because prior to its passage the Oklahoma law of 1895 was applicable to the restrictions upon the alienation of the allotments of Creek minors and for the purpose of depriving it of further application. The chief object of its enactment was to remove certain restrictions upon the alienation of the allotments of some of the members of the Five Civilized Tribes, and if any purpose regarding the law of 1895 ever entered the minds of the legislators who passed this act of 1908, that purpose was to make it clear beyond doubt that the law of 1895 was inapplicable to the restrictions imposed by Congress upon the allotments of members of those tribes who were minors. The court below committed no error in its negative answer to the first question in this case.

[3] Moreover, if the lease had been valid the plaintiff could not have maintained ejectment upon it, because no one under it had ever taken possession of any of the land described in it, or found or reduced to possession any of the oil or gas in the land, and the lease therefore granted no corporeal hereditament. Title in the plaintiff to a corporeal interest is essential to the maintenance of ejectment by one who has never been in possession.

[4] Oil and gas in the earth, unlike ore and coal, are fugacious and are not susceptible to ownership distinct from the soil. A grant by lease or deed of the oil or gas in a specified tract of land and of the right to occupy and use so much of the surface of the land only as may be necessary to prospect for and remove the gas and oil is not a grant of the oil and gas in the land, but of such a part thereof only as the grantee finds and reduces to possession. It vests no title to any oil or gas which he does not extract and reduce to possession, and hence no title to any corporeal right or interest. It is therefore insufficient to maintain ejectment by a grantee who has never taken possession of the land or prospected for or found any oil or gas under it. Kelly v. Keys, 213 Pa. 295, 62 Atl. 911, 912, 110 Am. St. Rep. 547; Kolachny v. Galbreath, 26 Okl. 772, 110 Pac. 902, 906, 38 L. R. A. (N. S.) 451; Dark v. Johnston, 55 Pa. 164, 168, 93 Am. Dec. 732; Gillespie v. Fulton Oil & G. Co., 236 Ill. 188, 86 N. E. 219; Funk v. Haldeman, 53 Pa. 229; Hicks v. American Natural Gas Co., 207 Pa. 570, 57 Atl. 55, 65 L. R. A. 209.

There was no error in the trial of this case, and the judgment below is affirmed.