## WITTE v. SHELTON, U. S. Marshal, et al.

### TIEDEMAN v. SAME.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1917.)

#### Nos. 4691, 4693.

1. STATUTES ⬳159—IMPLIED REPEAL—PRESUMPTIONS.

Repeal by implication is not favored and may be lawfully inferred only when the later statute is so repugnant to or inconsistent with the earlier one that it is clear the legislative body must have intended to repeal the former.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 229.]

2. INTOXICATING LIQUORS ⬳111—STATUTES—IMPLIED REPEAL—FICTITIOUS DELIVERIES.

Pen. Code (Act March 4, 1909, c. 321, 35 Stat. 1136 [Comp. St. 1913, § 10408]) § 238, making it punishable for an agent of a common carrier to deliver intoxicating liquor shipped in interstate commerce to a fictitious person or to any person under a fictitious name or to any person other than the consignee except upon the latter's written order, was not impliedly repealed by Webb-Kenyon Act March 1, 1913, c. 90, 37 Stat. 699 (Comp. St. 1913, § 8739), which prohibited the shipment of intoxicating liquor in interstate commerce into any state, territory, or district wherever such liquor was intended by any person interested therein to be received, possessed, or sold or used in violation of any law of such state, territory, or district, since the later act contains no provision repugnant to the former act and no provision indicating any intention to repeal the former act.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 121.]

3. STATUTES ⬳162—IMPLIED REPEAL—SPECIAL AND GENERAL LAWS.

Specific legislation on a particular phase of a subject is not affected by a subsequent law relating to the general subject which neither refers to the earlier law nor is repugnant to nor inconsistent with it.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 235–237.]

4. INTOXICATING LIQUORS ⬳111—STATUTES—SUSPENSION—FICTITIOUS DELIVERY.

The Webb-Kenyon Act, prohibiting shipment of intoxicating liquor in interstate commerce into a state to be received, sold, or used in violation of a law of the state, did not suspend Pen. Code, § 238, prohibiting agents of a carrier from delivering interstate shipments of liquor to fictitious persons even as to shipments into the state intended to be used contrary to a state statute prohibiting the delivery of liquor intended for sale, since

the state statute does not prohibit the fictitious delivery which is the gist of the offense under section 238, and there is no concurrent federal and state jurisdiction over that offense, even if it be conceded that the state could enact a statute covering the offense; and therefore it was not error to exclude evidence offered by one charged with conspiracy to violate section 238 that the liquor intended to be delivered to the fictitious person was intended for sale contrary to the state statute.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 121.]

5. CONSPIRACY ☞27—OVERT ACT—INNOCENT ACT.

Where a conspiracy had been formed to violate Pen. Code, § 238, by causing an interstate shipment to be made for the purpose of having the agent of the carrier deliver it to a fictitious person, telegraphic orders by one of the conspirators to another directing the shipments to be made are overt acts to effect the objects of the conspiracy within Pen. Code, § 37 (Comp. St. 1913, § 10201), though it was physically impossible for the agent to make the fictitious delivery until after the shipment had been made, and though such acts would have been innocent apart from the conspiracy.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 38, 39.]

6. HABEAS CORPUS ☞85(1)—EVIDENCE—PRESUMPTION—DEPORTATION FOR TRIAL—HEARING—INDICTMENT.

In habeas corpus proceedings to procure discharge from an order directing petitioners to be taken to another district for trial, allegations of the indictment against petitioners that the overt acts were committed in furtherance of the object of the conspiracy cannot be presumed to be false, in the absence of conclusive evidence in conflict therewith.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 77, 78.]

7. HABEAS CORPUS ☞85(1)—EVIDENCE—SUFFICIENCY—DEPORTATION FOR TRIAL.

Evidence at the hearing before a commissioner who ordered petitioner for habeas corpus to be taken to another district for trial *held* sufficient to show probable cause that defendant was guilty of the offense charged in the indictment, a conspiracy to cause an agent of an interstate carrier to deliver intoxicating liquors to a fictitious person, so as to justify the refusal of petitioner's discharge from custody under the mittimus.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 77, 78.]

8. HABEAS CORPUS ☞85(1)—PRESUMPTIONS—CORRECTNESS OF FINDINGS.

On petition for habeas corpus to procure discharge from a commissioner's order of removal to another district for trial, the commissioner's finding of probable cause is presumed correct, unless there was no substantial evidence to sustain it.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 77, 78.]

9. CRIMINAL LAW ☞242(5)—REMOVAL FOR TRIAL—EVIDENCE—INDICTMENT.

An indictment charging a criminal conspiracy, introduced in evidence in proceedings before a United States commissioner for removal of defendant to another district for trial, is itself prima facie evidence of probable cause.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 509, 510.]

Appeals from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Separate applications by M. F. Witte and by C. H. Tiedeman against W. A. Shelton, as United States Marshal for the Western District of Missouri, and others, for writ of habeas corpus to procure the discharge of petitioners from custody under a mittimus issued by a

United States Commissioner. Petitions dismissed, and petitioners appeal. Affirmed.

Paul A. Ewert, of Joplin, Mo., and Norman R. Haskell, of Oklahoma City, Okl. (E. G. McAdams, of Oklahoma City, Okl., on the brief), for appellant in No. 4691.

Norman R. Haskell, of Oklahoma City, Okl. (E. G. McAdams, of Oklahoma City, Okl., Ralph W. Grier, of St. Joseph, Mo., and Harold Lee, of Oklahoma City, Okl., on the brief), for appellant in No. 4693.

William G. Lynch, Asst. U. S. Atty., of Kansas City, Mo. (Francis M. Wilson, U. S. Atty., and Sam O. Hargus, Asst. U. S. Atty., both of Kansas City, Mo., on the briefs), for appellees.

Before SANBORN and SMITH, Circuit Judges, and AMIDON, District Judge.

SANBORN, Circuit Judge. These are appeals from dismissals by the District Judge below of petitions for writs of habeas corpus and for the discharge of the petitioners. The stronger case for the petitioners is that of Witte v. Shelton, and if Witte is not entitled to a reversal of the order below the case of Tiedeman must follow that conclusion. The discussion of the cases is therefore confined to the Witte Case. Witte sought a discharge by writ of habeas corpus from the custody of the United States marshal for the Western District of Missouri, who held him under a final mittimus issued by the United States commissioner of that district, which commanded the marshal and the keeper of the jail of Newton county safely to keep the prisoner in custody to the end that he might be deported to the District Court of the United States for the Western District of Oklahoma for trial under an indictment for the violation of section 37 of the federal Penal Code. Section 37 of the Penal Code provides that if two or more persons conspire to commit any offense against the United States, and one or more of them does any act to effect the object of the conspiracy, each of the parties to the conspiracy shall suffer a fine or imprisonment. The indictment charged that Witte, Elkins, Creekmore, Filler, Franke, and Tiedeman, conspired together to commit the offense specified in section 238 of the Penal Code. Section 238 denounces, under penalty of a fine or imprisonment, the offense of the delivery by an agent or employé of an express company, or other common carrier, to any fictitious person, or to any person under a fictitious name, of any intoxicating liquor shipped in interstate commerce, and this section became effective January 1, 1910.

The mittimus under which the marshal held the prisoner was issued after a hearing before the commissioner at which the indictment, the testimony of the prisoner, and other evidence were introduced and considered by him. Counsel for Witte insist that the court below should have issued the writ and discharged him because the evidence before the commissioner, which was introduced in evidence before the court below, conclusively showed that neither that court nor the commissioner had any jurisdiction to hold him: (1) Because section 238 had been repealed by the Act of March 1, 1913, commonly known as the Webb-Kenyon Act, 37 Stat. c. 90, p. 699; (2) because, if it had

not been repealed in whole, it had been suspended by the Webb-Kenyon Act as to the intoxicating liquor shipped into Oklahoma in interstate commerce intended for sale, barter, or gift in violation of the statutes of Oklahoma (1 Rev. Laws of Oklahoma 1910, § 3605; Joplin Mercantile Co. v. United States, 236 U. S. 531, 546, 35 Sup. Ct. 291, 59 L. Ed. 705), and the commissioner committed a fatal error at his hearing in rejecting evidence offered by the prisoner to the effect that the person to whom the liquor specified in the indictment was alleged to have been shipped under a fictitious name intended to resell it to other persons in Oklahoma in violation of the laws of that state; (3) because no act to effect the object of the alleged conspiracy is alleged in the indictment or in the complaint for the arrest and removal of the prisoner or is proved by the evidence before the commissioner; and (4) because the testimony of the prisoner overcame the presumption of probable cause to believe that he was guilty of the offense, charged in the indictment which arose from the allegations of that instrument.

[1] Did the Webb-Kenyon Act repeal section 238 of the Penal Code? It contains no express repeal of it, and it makes no reference to it. If it is repealed, therefore, the repeal is by implication, and such a repeal is not presumed. It is only when the later statute is so repugnant to or inconsistent with the earlier one that it is clear, that the intention of the legislative body must have been thereby to repeal the former that a repeal by implication may be lawfully inferred.

"To induce a repeal of a statute by the implication of inconsistency with a later statute, there must be such a positive repugnancy between the two statutes that they cannot stand together." Arthur v. Homer, 96 U. S. 137, 140, 27 L. Ed. 811; Gowan v. Harley, 56 Fed. 973, 978, 6 C. C. A. 190, 195.

[2, 3] Section 238 created, denounced, and prescribed the punishment for the specific offense of the delivery, by an agent, officer, or employé of a common carrier, of intoxicating liquor shipped in interstate commerce, to a fictitious person, or to any person under a fictitious name, or to any person but the consignee, except upon the latter's written order. The Webb-Kenyon Act, 37 Stat. 699, prohibited the shipment of intoxicating liquor in interstate commerce into any state, territory, or district of the United States wherever such intoxicating liquor was intended by any person interested therein to be received, possessed, sold, or used in violation of any law of such state, territory, or district. The latter act contains no provision repugnant to the former act, no provision indicating any intention of the members of Congress thereby to repeal or strike down the denunciation of the delivery by agents or officers of a common carrier of liquor in interstate commerce to persons under fictitious names, or to permit them so to do. The former act is of the nature of a special law creating and enacting special legislation as to the new offense it creates. The latter is of the nature of a general law prohibiting the shipment of intoxicating liquor in interstate commerce under the circumstances therein specifically noted. Specific legislation upon a particular phase of a single subject is not affected by a subsequent law relating to a general subject which neither refers to the earlier law nor is repugnant to nor inconsistent with it, but the two laws must stand together,

the former as the law of its specific phase of the subject, and the latter as the general law relating thereto. State v. Stoll, 17 Wall. 425, 436, 21 L. Ed. 650; Gowen v. Harley, 56 Fed. 973, 978, 6 C. C. A. 190, 195; Board of Com'rs of Seward Co. v. Ætna Life Ins. Co., 90 Fed. 222, 227, 32 C. C. A. 585, 590; Christie-Street Commission Co. v. United States, 136 Fed. 326, 333, 69 C. C. A. 464, 471; Priddy v. Thompson, 204 Fed. 955, 959, 123 C. C. A. 277, 281. There is no such inconsistency or repugnancy between the Webb-Kenyon Act and section 238 of the Penal Code as will warrant the conclusion that Congress intended by the passage of the former to repeal the latter, and it was not repealed thereby.

[4] The second contention is that, although section 238 has not been repealed in toto, yet it has been suspended by the Webb-Kenyon Act as to all shipments in interstate commerce of intoxicating liquor into Oklahoma which were intended, as the act reads, "by any person interested therein, to be received, possessed, sold, or in any manner used * * * in violation of any law" of that state, that as the laws of Oklahoma prohibit the manufacture, sale, barter, gift, or furnishing of such liquor only, and do not prohibit its receipt, possession or use by consignees for their own consumption (1 Revised Laws of Oklahoma 1910, § 3605), section 238 is suspended as to the delivery by any officer or agent of a common carrier of such liquor as any one interested in intends to resell or give away in violation of the laws of that state, and is in force only as to the delivery of such liquor as persons interested in intend shall be received, possessed, and used for their own consumption or use; that consequently the evidence offered by the prisoner to show that the person to whom the indictment alleged the liquor was to be delivered under a fictitious name intended to resell it in violation of the laws of Oklahoma would have shown that the delivery in this case and the case itself were not within the reach of section 238, and consequently were never within the jurisdiction of the court in Oklahoma, the commissioner, or the court below.

The strongest argument in support of this contention is the argument by analogy based on the decision of the Supreme Court in Joplin Mercantile Co. v. United States, 236 U. S. 531, 546, 35 Sup. Ct. 291, 59 L. Ed. 705. It is said that the facts in the case at bar are analogous to the facts in that case, and that for that reason section 238 should be held to be suspended to the extent above stated, as section 8 of the Act of March 1, 1895, c. 145, 28 Stat. 693, was in that case held to be suspended in part though not repealed by the enabling act of Oklahoma of June 16, 1906, c. 3335, 34 Stat. 267. An argument by analogy never rises to the strength of a well-founded syllogism, is always liable to mislead, and its strength is measured by the closeness of the analogy of the facts. Let us compare the pertinent facts in the Joplin Mercantile Company's Case with those in the case at bar and observe their similarities and differences. In that case section 8 of the act of 1895 had provided:

"That any person * * * who shall, in said (Indian) territory, manufacture * * * any vinous, malt, or fermented liquors, or any other intoxicating drinks * * * or who shall carry, or in any manner have carried, into

said Territory any such liquors or drinks * * * shall, upon conviction thereof, be punished," etc.

By the enabling act of Oklahoma of June 16, 1906, Congress provided for the admission of Oklahoma, which comprised the former Indian Territory and large tracts of land outside that territory into the Union, and in section 3 required that the convention to form the Constitution of the new state should provide in that instrument, among other things, that the manufacture, sale, barter, giving away, or otherwise furnishing intoxicating liquors within those parts of the state then known as the Indian Territory be prohibited for 21 years from the admission of the state, and thereafter, until the people of the state should otherwise provide, and that "any person, individual or corporate, who shall manufacture, sell, barter, give away, or otherwise furnish intoxicating liquor of any kind * * * or who shall ship or in any way convey such liquors from other parts of said state" into the former Indian Territory, shall be punished by fine and imprisonment. The people of the state of Oklahoma had embodied these provisions in section 7, art. 1, of their Constitution, had therein declared that upon the admission of that state into the Union those provisions should be immediately enforceable in the courts of the state, and the Legislature of that state had enacted a statute to the same effect. 1 Laws of Oklahoma 1910, § 3605. The Supreme Court conceded that the question with which they were compelled to deal was "by no means easy of solution," that the act of 1895 was not repealed, but that, in view of the specific requirements of the enabling act and the serious inconvenience and confusion that would result from the concurrent jurisdiction of the nation and the state over the same offenses, the active exercise of the federal authority to enforce the provisions of section 8 of the act of 1895, so far as it related to intrastate transactions, was suspended and those provisions were not enforceable, while so far as they related to interstate transactions they remained in force. 236 U. S. 544, 545, 546, 547, 35 Sup. Ct. 291, 59 L. Ed. 705. But in that case the Supreme Court held that the act of 1895 was suspended respecting intrastate transactions only, and that it remained in force respecting interstate transactions. It is respecting an interstate transaction, a delivery of a shipment from Joplin, Mo., to the city of Oklahoma in the state of Oklahoma, that the offense in the case at bar is charged. In the Joplin Mercantile Company's Case, the Congress had expressly required the state to provide in its Constitution for the punishment by the state itself of the offenses over which the court held the exercise of the federal authority to be suspended. In the case at bar, the Congress has never required the state of Oklahoma to denounce or to prescribe any punishment for the offense charged in the indictment in hand, and it has never done so. The offenses respecting intrastate transactions concerning which the Supreme Court held the federal authority suspended in the former case were the same offenses made punishable by the state Constitution and laws, the manufacture, sale, furnishing, and carrying of intoxicating liquor within the state. In the case in hand, there is no provision of the Constitution or statutes of the state of Oklahoma denouncing or prescribing any punishment for the offense of delivering or caus-

ing the delivery by an officer, employé, or agent of a common carrier of intoxicating liquor shipped in interstate commerce to a fictitious person, or to a person under a fictitious name; therefore none of that serious inconvenience and confusion from the exercise over this offense of concurrent federal and state authority which induced the Supreme Court to hold that the act of 1895 was partially suspended. Hence it is that the argument by analogy utterly fails, and section 238 may not be lawfully suspended in whole or in part on the authority of the case of the Joplin Mercantile Company.

Counsel cite decisions of the courts of the states to the proposition that since the enactment of the Webb-Kenyon law interstate shipments of intoxicating liquor become subject to seizure under the laws of the states as soon as they arrive in the state of their destination and persons by selling, giving away, or carrying them are from that time subject to punishment for the violation of state laws regarding them. Conceding, without deciding, the soundness of this proposition, the conclusion which counsel seek to deduce from it, that the passage of that act repealed, or suspended, or renounced the power of the nation to enforce any part of section 238, neither logically nor reasonably follows. It still remains true that the state of Oklahoma has never enacted any law prohibiting or prescribing any punishment for the offense of the delivery by an officer, agent, or employé of a common carrier of intoxicating liquors shipped in interstate commerce to a fictitious person, or to a person under a fictitious name, so that none of the confusion or inconvenience of concurring national and state jurisdiction can result from the enforcement of section 238, that the offense thereby created is an offense respecting interstate and not respecting intrastate transactions, that the Joplin Mercantile Company's Case is not analogous to this case and does not rule it, and that no persuasive reason is presented in the argument or authorities of counsel for the prisoner why the reasons stated above for holding that the Webb-Kenyon Act did not repeal section 238 in toto are not also decisive of the question whether or not that act suspended or repealed it in part. For these reasons, our conclusion is that section 238 has not been repealed or suspended either in whole or in part by the Webb-Kenyon Act, or otherwise, and that it is in full force and effect. There was therefore no error in the rejection of the evidence offered to show that the person to whom it was alleged in the indictment the intoxicating liquor was to be delivered intended to resell it in Oklahoma in violation of the laws of that state.

[5] But counsel insist that the record in this case discloses the absence of jurisdiction of the United States District Court of Oklahoma to try the prisoner for the offense charged in the indictment and the absence of jurisdiction of the commissioner and of the court below to direct his removal to Oklahoma for trial because the indictment fails to charge any crime. In entering upon the discussion of this issue, counsel write in their brief as follows:

"We do not claim the right here to question the technical sufficiency of the indictment, nor even to ask the determination of close and doubtful questions of law. Neither do we contend that we are entitled to demand the weighing of conflicting evidence by the commissioner or by the court upon application for

removal or for a writ of habeas corpus. For the purpose of this hearing, we concede to the government the broadest and most liberal construction of the indictment. We concede that if it even inferentially charges a crime, no matter how defectively, it is sufficient for the purpose of removal. We go farther and concede that, though the indictment wholly fails ·to charge a crime, the government is yet entitled to prevail if it has offered a scintilla of proof dehors the record to supply the deficiency."

On another page of their brief, this appears:

"However, for the purpose of this proceeding we construe the indictment as alleging a conspiracy between Elkins, Witte, Tiedeman, and others, to have and cause Tiedeman, as agent for the express company, to violate section 238 of the Penal Code by the delivery of the liquor to Elkins under a fictitious name, and that Elkins sent these telegraphic orders with the intention that they should be shipped by the Milwaukee Beer Company to him at Oklahoma City under the fictitious name of 'W. Moran,' and· that when such liquor should be received at Oklahoma City Tiedeman should violate section 238 by delivering to him the liquor so ordered. Our sole contention on this branch of the case is that, assuming the truth of all these allegations, no act to effect the object of the conspiracy within the meaning of the statute has been alleged or shown."

The foregoing admissions and concessions are accepted, and the discussion will be limited to the consideration of the sole contention here stated on the basis of the soundness of the law and the facts conceded.

[6] The telegraphic orders mentioned in the last concession quoted were orders for the shipment of whisky which were alleged in the indictment to have been sent by. Elkins, one of the conspirators, in pursuance of the conspiracy, "and while the same was in full force and effect and to effect the object thereof," to Milwaukee Beer Company at Joplin, Mo., at various dates from four months to nine months after August 1, 1914, at which time it was alleged in the indictment that the conspiracy had been formed and after which time until August 2, 1915, it was also alleged in the indictment that the conspiracy was continuously in existence. The sending of these orders were the only overt acts alleged in the indictment to have been done to effect the object of the conspiracy, and, though it is alleged that they were done for that purpose, counsel strenuously argue that they could not have been done to effect the object of the conspiracy: (1) Because, until the indispensable interstate shipment had been made and had reached the possession of Tiedeman, the agent of the common carrier at the point of destination, a violation of section 238 was legally and physically impossible; but the offense charged is not the violation of section 238, but the formation of a conspiracy to violate it and the performance by one of the conspirators of acts to effect the object of the conspiracy, and such a conspiracy to violate section 238 must in the nature of things be formed before the violation and before the overt acts to effect the object of the conspiracy, such as the ordering or procuring the interstate shipments which are indispensable to such a violation, may be done, and it is alleged in the indictment that these overt acts were done in violation of section 37 of the Penal Code. (2) Because the acts of Elkins in ordering the· beer were parts of the agreement of conspiracy to violate section 238 and were not acts done to effect the object of it; but the averments of the indictment are that the agreement of conspiracy was made before these acts were

done, and that the acts were done to effect its object, and on this application for a writ of habeas corpus the courts may not presume that these allegations of the indictment are false in the absence of conclusive evidence in conflict with them. (3) Because the acts of sending the orders for the shipment of the whisky did not tend to effect the object of the conspiracy, but were innocent acts which might have been, and as is insisted by counsel were, done without effecting or intending to effect that object. It is conceded that the telegraphic orders in themselves might have been innocent, and that they might have been made without any intent or purpose to effect the object of the conspiracy; but it was essential to the accomplishment of that object that Tiedeman, the agent of the common carrier, should receive and have in his possession or control an interstate shipment of intoxicating liquors, that Elkins or some other person should ship it, or cause it to be shipped, and the averments of the indictment are that Elkins, by means of the telegraphic orders, directed that these interstate shipments should be made to Tiedeman for the purpose of effecting the object of the conspiracy. Acts otherwise innocent may become criminal when they are performed by the members of a criminal conspiracy to effect its object. The telegraphic orders of Elkins were well calculated to assist in effecting the object of this conspiracy. They tended to cause the interstate shipments indispensable to the attainment of that object to be made, they were in the train or line of causal connection with the unlawful object, and although if they were not performed to effect that object they were innocent, yet, as it was directly alleged in the indictment that they were done to effect that object and as it is clear that they might have had that effect, the contention of counsel for the prisoner, that "no act to effect the object of the conspiracy within the meaning of the statute has been alleged or shown," cannot be sustained. Houston v. United States, 217 Fed. 852, 855, 133 C. C. A. 562, 565; United States v. Benson, 70 Fed. 591, 17 C. C. A. 293; United States v. Sanche (C. C.) 7 Fed. 715; United States v. Donau, 11 Blatchf. 168, Fed. Cas. No. 14,983; Gantt v. United States, 108 Fed. 61, 47 C. C. A. 210; United States v. Shevlin (D. C.) 212 Fed. 343.

[7] Finally, it is insisted that the commissioner was mistaken in his finding that there was probable cause to believe that the prisoner was guilty of the offense charged in the indictment. The evidence before the commissioner on this subject consisted of the indictment, of undisputed evidence of the prisoner's identity, and of his own testimony to the effect that the averments in the indictment, so far as he was concerned, were not true. The telegraphic orders charged to have been sent by one of the conspirators were alleged in the indictment to have been signed Frisco Club and to have been sent by Elkins. The prisoner in his testimony before the commissioner stated that he was the person named in the indictment, that he was the manager of the Milwaukee Beer Company at Joplin, Mo., that he knew Elkins and Tiedeman, that he received the telegraphic orders signed Frisco Club from Elkins or Franke, that the Frisco Club, by Elkins or Franke, directed him to ship intoxicating liquors ordered by that

club, when not otherwise directed, to W: Moran, until further orders, that he shipped all liquors ordered by the Frisco Club or Elkins to this. W. Moran and charged them to the Frisco Club, that he never knew W. Moran, and W. Moran never paid him for any of the liquors sent him, but the Frisco Club or Elkins paid therefor.

[8] On an application for a writ of habeas corpus to relieve a prisoner from a commissioner's order of removal to another district, the legal presumption is that the latter's finding of probable cause is correct. It is only when there was no substantial evidence to sustain that finding, and not when the commissioner reached an erroneous conclusion upon the question of the weight of substantially conflicting evidence, that courts may lawfully grant relief by writ of habeas corpus on the ground of no probable cause.

[9] In this case the indictment was introduced in evidence and was itself prima facie evidence of probable cause. Hyde v. Shine, 199 U. S. 62, 84, 25 Sup. Ct. 760, 50 L. Ed. 90; Price v. Henkel, 216 U. S. 488, 491, 30 Sup. Ct. 257, 54 L. Ed. 581. The prisoner admitted his identity and testified to the receipt of the telegraphic orders for the liquor from Elkins signed by the Frisco Club and the shipment of this liquor to W. Moran, who never paid for any of it and whom the prisoner never knew. The record before the commissioner was not, therefore, so barren of all evidence of probable cause to believe the prisoner guilty of the offense charged in the indictment that the commissioner can be lawfully held to have erred in committing him for removal, or that the court below can be decided to have erred in denying his petition for the writ of habeas corpus and for his discharge.

The order and judgment below in each of the cases in hand must therefore be, and they are hereby, affirmed.