UNITED STATES v. WOOD.

(District Court, D. New Jersey. March 4, 1909.)

1. INDICTMENT AND INFORMATION (§ 108*) — SUFFICIENCY—STATUTORY OFFENSES —REFERENCE TO STATUTE.

An indictment charging an offense against the United States will be upheld if there is any act of Congress in force which can sustain it, whether or not such act is specifically mentioned.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 284; Dec. Dig. § 108.*]

2. ALIENS (§ 21*)—CHINESE EXCLUSION ACTS—REPEAL BY IMPLICATION OF PROVISIONS OF PRIOR ACT.

Sections 2 and 3 of the Chinese exclusion act of May 6, 1882, c. 126, 22 Stat. 59, as amended in 1884 (Act July 5, 1884, c. 220, 23 Stat. 115 [U. S. Comp. St. 1901, p. 1306]), which make it a misdemeanor for the master of any vessel to knowingly bring within the United States on such vessel and land or attempt to land any Chinese laborer from any foreign port, etc., were repealed by implication by sections 9 and 10 of Act Sept. 13, 1888, c. 1015, 25 Stat. 478 (U. S. Comp. St. 1901, p. 1316), which cover the same offense but provide a different punishment.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 21.*]

3. INDICTMENT AND INFORMATION (§ 111*)—OFFENSES AGAINST CHINESE EXCLUSION ACT—INDICTMENT OF MASTER OF VESSEL LANDING CHINESE.

An indictment under the Chinese exclusion act of September 13, 1888, c. 1015, § 9, 25 Stat. 478 (U. S. Comp. St. 1901, p. 1316), which makes it a misdemeanor for the master of any vessel to knowingly bring within the United States on such vessel and land or attempt to land or permit to be landed any Chinese laborer or other Chinese person "in contravention of the provisions of this act," must negative the exceptions stated in section 10 of the act.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 295–298; Dec. Dig. § 111.*]

On Demurrer to Indictment.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

H. P. Lindabury, Asst. U. S. Atty.

Convers & Kirlin (John M. Woolsey and Charles T. Cowenhoven, Jr., of counsel), for defendant.

CROSS, District Judge. There are in the indictment before the court two counts, both of which have been demurred to. Each of them charges in effect that the defendant on the 20th day of August, 1906, at the port of Constable Hook, within this district, and the jurisdiction of this court, then and there being the master of the steamship Highland Monarch, plying between the kingdom of Great Britain and the state of New Jersey, and then and there owned by a corporation known as the "Monarch Steamship Company," did then and there knowingly bring within the United States, on such vessel, to the port of Constable Hook, from a foreign port, to wit, Newcastle, in the kingdom of Great Britain, a certain Chinese laborer (giving his name), and did then and there knowingly land, and permit to land, within the said United States as aforesaid, the said Chinese laborer (again naming him), contrary to the form of the statute, etc.

An indorsement on the indictment was undoubtedly intended to point out the acts of Congress upon which the indictment was founded. Such indorsement, however, did not in any wise conclude the government. The indictment will be upheld if there is any act in force which can sustain it, whether or not such act be specifically mentioned. Williams v. United States, 168 U. S. 382, 18 Sup. Ct. 92, 42 L. Ed. 509. A demurrer to an indictment charging the defendant herein with the same or a like offense was sustained in United States v. Wood (D. C.) 159 Fed. 187. The indictment in that case was found under the act of September 13, 1888, c. 1015, § 9, 25 Stat. 478 (U. S. Comp. St. 1901, p. 1316), which is not among those referred to in the indorsement upon the back of the present indictment. It is manifest, however, upon examination, that the indictment now under consideration is insufficient under that act, for the reasons set forth in United States v. Wood, supra. It was therein held that section 9 of the act of 1888 does not in and of itself define a crime, and that a valid indictment under that section must negative the exceptions contained in section 10. It was the intention of the pleader in the present case, as appears by his indorsement on the indictment, to rest it upon the provisions of the act of May 6, 1882, c. 126, 22 Stat. 58, as amended by the act of July 5, 1884, c. 220, 23 Stat. 115 (U. S. Comp. St. 1901, p. 1305), but, aside from such indorsement, it is quite plain that, if the indictment can be sustained, it must be sustained under sections 2 and 3 of that act.

It is claimed, however, on behalf of the defendant, that those sections were impliedly repealed by the act of September 13, 1888. The question for decision, therefore, is, whether sections 2 and 3 of the act of 1882, as amended, were repealed, by implication, by sections 9 and 10 of the act of 1888. Sections 2 and 3 of the act of May 6, 1882, as amended, are as follows:

"Sec. 2. That the master of any vessel who shall knowingly bring within the United States on such vessel, and land, or attempt to land, or permit to be landed any Chinese laborer, from any foreign port or place, shall be

deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine of not more than five hundred dollars for each and every such Chinese laborer so brought, and may also be imprisoned for a term not exceeding one year.

"Sec. 3. That the two foregoing sections shall not apply to Chinese laborers who were in the United States on the seventeenth day of November, eighteen hundred and eighty, or who shall have come into the same before the expiration of ninety days next after the passage of the act to which this act is amendatory, nor shall said sections apply to Chinese laborers, who shall produce to such master before going on board such vessel, and shall produce to the collector of the port in the United States at which such vessel shall arrive, the evidence hereinafter in this act required of his being one of the laborers in this section mentioned; nor shall the two foregoing sections apply to the case of any master whose vessel, being bound to a port not within the United States, shall come within the jurisdiction of the United States by reason of being in distress or in stress of weather, or touching at any port of the United States on its voyage to any foreign port or place: Provided: that all Chinese laborers brought on such vessel, shall not be permitted to land except in case of absolute necessity, and must depart with the vessel on leaving port."

For the sake of convenience, sections 9 and 10 of the act of 1888 are also set forth at length. They read as follows:

"Sec. 9. That the master of any vessel who shall knowingly bring within the United States on such vessel, and land, or attempt to land, or permit to be landed any Chinese laborer or other Chinese person, in contravention of the provisions of this act, shall be deemed guilty of a misdemeanor and, on conviction thereof, shall be punished with a fine of not less than five hundred dollars nor more than one thousand dollars, in the discretion of the court, for every Chinese laborer or other Chinese person so brought, and may also be imprisoned for a term of not less than one year, nor more than five years, in the discretion of the court.

"Sec. 10. That the foregoing section shall not apply to the case of any master whose vessel shall come within the jurisdiction of the United States in distress or under stress of weather, or touching at any port of the United States on its voyage to any foreign port or place. But Chinese laborers or persons on such vessel shall not be permitted to land, except in case of necessity, and must depart with the vessel on leaving port."

Section 15 of the act of 1888 provided:

"That the act entitled 'An act to execute certain treaty stipulations relating to Chinese,' approved May sixth, eighteen hundred and eighty-two, and an act to amend said act approved July fifth, eighteen hundred and eighty-four, are hereby repealed to take effect upon the ratification of the pending treaty as provided in section one of this act."

The treaty referred to in section 15, however, was not ratified, hence the acts of 1882 and 1884 were not affected by the repealing clause, and they are in force unless they have been repealed by implication. Notwithstanding the repealing clause of the act of 1888, just quoted, failed to take effect because the treaty therein referred to was not ratified, the act itself became operative, except as to certain sections whose subject-matter plainly presupposed the ratification of the treaty. United States v. Long Hop (D. C.) 55 Fed. 58; United States v. Yong Yew (D. C.) 83 Fed. 832, 835.

Furthermore, on April 29, 1902, Congress passed an act (Act April 29, 1902, c. 641, 32 Stat. 176 [U. S. Comp. St. Supp. 1907, p. 414]). by section 1 of which sections 5, 6, 7, 8, 9, 10, 11, 13, and 14 of the act of September 13, 1888, were expressly re-enacted. Again, on April

27, 1904, Congress passed still another act (Act April 27, 1904, c. 1630, 33 Stat. 428 [U. S. Comp. St. Supp. 1907, p. 414]), by the fifth section of which section 1 of the act of April 29, 1902, was amended so as in part to read as follows:

"All laws in force on the twenty-ninth day of April, nineteen hundred and two, regulating, suspending, or prohibiting the coming of Chinese persons or persons of Chinese descent into the United States, and the residence of such persons therein, including sections five, six, seven, eight, nine, ten, eleven, thirteen, and fourteen, of the act entitled 'An Act to prohibit the coming of Chinese laborers into the United States,' approved September thirteenth, eighteen hundred and eighty-eight be, and the same are hereby, re-enacted, extended, and continued, without modification, limitation, or condition."

The purpose of the last two acts is defined in Hong Wing v. United States, 142 Fed. 128, 73 C. C. A. 346. By them sections 9 and 10, among others, of the act of September 13, 1888, were expressly re-enacted. That those sections are consequently in full force and effect, there can be no doubt. But since by the act of April 27, 1904, Congress re-enacted not only the sections of the act of 1888 above enumerated, but also all of the Chinese exclusion acts which were then in force, the question still remains whether or not the act of 1882 was one of the acts then in force. In this connection it should be noted that much of the matter contained in section 3 of that act was in effect repealed by section 1 of the act of October 1, 1888, c. 1064, 25 Stat. 504 [U. S. Comp. St. 1901, p. 1318], which enacted:

"That from and after the passage of this act, it shall be unlawful for any Chinese laborer who shall at any time heretofore have been, or who may now or hereafter be, a resident within the United States, and who shall have departed, or shall depart therefrom, and shall not have returned before the passage of this act, to return to, or remain in the United States."

After the passage of that act, it will be seen that all of the provisions of sections 2 and 3 of the act of 1882 which remain and are material to the crime alleged in this indictment are covered by sections 9 and 10 of the act of 1888. Under the circumstances, therefore, the later act must be taken as the final statement of the law in respect of the crime thus alleged. The elements which constitute the crime are the same in both acts, but the punishment is different. By the earlier act the punishment which might be imposed thereunder was limited to a fine of not more than $500 for each and every Chinese laborer brought into the United States, and imprisonment for a term not exceeding one year. By the later act a fine might be imposed of not less than $500, or more than $1,000, in the discretion of the court, and imprisonment for a term of not less than one year or more than five years, in the discretion of the court. Had the treaty referred to in the act of September 13, 1888, been ratified, the law of 1882, as amended, would have been expressly repealed by section 15 of the act of 1888, and that act would have been the only operative law upon the subject. Congress having, therefore, expressly provided that, in the event of the ratification of the treaty, the act of 1888 should stand as the final and only exposition of the law upon the subject, it may be argued with no little force that, by expressly re-enacting in terms certain sections of that law, after the treaty had failed, it was thereby intended that those specific sections thus re-enacted should occupy the

same position and have the same effect that they would have occupied and had if the treaty had been ratified. But, however that may be, sections 9 and 10 of the act of 1888 so fully cover all that was not repealed of sections 2 and 3 of the act of 1882 that the later act, with its altered penalties, must be accepted as the only one in force pertaining to the crime alleged in the indictment under consideration. It is true that repealers by implication are not favored; still where, as in this case, the elements of the crime are the same, but the punishment which may be imposed therefor is different, the authorities not only warrant but require the conclusion that the later act is intended to supersede the earlier. In United States v. Tynen, 11 Wall. 88, 20 L. Ed. 153, Mr. Justice Field, in holding that a later statute repealed a former statute dealing with the same subject, said, at page 92 of 11 Wall.:

"There is no express repeal of the thirteenth section of the act of March 3, 1813, c. 42, 2 Stat. 811, declared by the act of 1870, and it is a familiar doctrine that repeals by implication are not favored. When there are two acts on the same subject, the rule is to give effect to both if possible. But if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first: and even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions. plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act."

Again, in The Paquete Habana, 175 U. S. 677, 20 Sup. Ct. 290, 44 L. Ed. 320, Mr. Justice Gray said, at page 685 of 175 U. S., at page 294 of 20 Sup. Ct.:

"And it is a well-settled rule in the construction of statutes, often affirmed and applied by this court, that, 'even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act' "—citing cases.

In Murphy v. Utter, 186 U. S. 95, 22 Sup. Ct. 776, 46 L. Ed. 1070, the court, dealing with territorial and congressional legislation, at page 105 of 186 U. S., at page 780 of 22 Sup. Ct., says:

"Both acts are complete in themselves, and each is, upon its face, independent of the other. It is impossible to say that, if the territorial act were repealed, the act of Congress passed three years later would also fail in consequence thereof, because the latter is not only the later, but the paramount, act. They must either stand together as two independent pieces of legislation, or the general, and perhaps the sounder, rule stated in United States v. Tynen, 11 Wall. 88, 20 L. Ed. 153, be applied, that where there are two acts on the same subject, and the later act embraces all the provisions of the first, and also new provisions, and impose different or additional penalties, the latter act operates, without any repealing clause, as a repeal of the first."

In Collector v. Richards, 23 Wall. 246, 23 L. Ed. 95, Mr. Justice Bradley, at page 257 of 23 Wall., said:

"The court below decided that the case was to be governed by the act of 1846, and that the act of 1873 did not cover or embrace it. The correctness of this decision is now before us for review. Of course, the act last in date must prevail if it covers the case."

So, too, in United States v. Claflin, 97 U. S. 546, 24 L. Ed. 1082, Mr. Justice Strong, in rendering the opinion of the court, at page 551 of 97 U. S., cited with approval certain cases as follows:

"In Mitchell v. Brown (1 El. & El. 267), it was ruled in the Court of Queen's Bench that, if a later statute again describes an offense created by a former statute, and affixes a different punishment to it, varying the procedure, etc., the later operates by way of substitution, not cumulatively, and the former statute is repealed. A similar rule was asserted by Baron Bramwell in Ex parte Baker, 2 H. & N. 219. So in Barry v. Croydon Gas Co. (15 C. B., n. s. 568), an act imposing a penalty of £200 upon the undertaker of any gasworks for fouling any stream, etc., to be recovered by the person into whose water the foul substance should be conveyed, was held to repeal by implication a former act describing the same offense and imposing the same penalty, to be sued for by any common informer. The two penalties were held not to be cumulative. The principle of these rulings has been frequently recognized by courts in this country."

"In Norris v. Crocker et al., 13 How. 429, 14 L. Ed. 210, it was said by this court: 'As a general rule, it is not open to controversy that, where a new statute covers the whole subject-matter of an old one, adds offenses, and prescribes different penalties for those enumerated in the old law, the former is repealed by implication, as the provisions of both cannot stand together.' That was a case in most points much like the present. The older statute had imposed a penalty for certain offenses, namely, obstructing a claimant in arresting a fugitive from labor, rescuing the fugitive after his arrest, or harboring and concealing him with knowledge that he was a fugitive; and the statute had enacted that the claimant might recover the penalty for his own benefit, and also reserved to him a right of action in damages for the actual injuries he might have sustained, be they more or less. The later statute imposed a greater penalty, and added imprisonment for the same offenses, gave no right to the claimant to recover the penalty, but gave him a right to recover by way of damages the sum of $1,000 for each fugitive lost by reason of the offenses. This court held that the two statutes were in conflict, and consequently that the earlier was repealed."

Among a multitude of other cases holding similarly are: District of Columbia v. Hutton, 143 U. S. 18, 26, 12 Sup. Ct. 369, 36 L. Ed. 60; King v. Cornell, 106 U. S. 395, 396, 1 Sup. Ct. 312, 27 L. Ed. 60; National Bank v. United States, 107 U. S. 445, 451, 2 Sup. Ct. 561, 27 L. Ed. 537.

In my judgment, the only act in force defining and punishing the crime alleged in the indictment under consideration is that of 1888, and, since both of its counts are defective under that act for the reason already given, it must be quashed. My conclusion, moreover, is, to some extent at least, supported by the fact that I have not found or been referred to any reported case where an indictment has been found under the act of 1882, since the act of 1888 has been in force; since that time they have all been framed under the later act. The result just announced would have been reached more reluctantly if the United States did not have, under the act of 1888, a full, complete, and adequate remedy in the premises.

The demurrer will be sustained.