## UNITED STATES v. FREIDERICKS et al.

(District Court, D. New Jersey. May 17, 1921.)

1. **Indictment and information ☞108—Indorsement of statute under which drawn no part of indictment.**
   The indorsement on an indictment of the statute under which it is drawn is no part of the indictment, which is sufficient if it charges an offense under any statute.

2. **Internal revenue ☞2—Statutory provisions not repealed by National Prohibition Act.**
   Under the settled rules that repeals by implication are not favored, and that where the provisions of an earlier and a later statute are not absolutely irreconcilable and no purpose to repeal the earlier is expressed or clearly implied in the later, effect will, if possible, be given to both, Rev. St. § 3296 (Comp. St. § 6038) and Act Aug. 27, 1894, c. 349, §§ 51, 59 (Comp. St. §§ 6058, 6065), relating to bonded warehouses, and prohibiting the removal of any liquor therefrom without payment of the tax, or in the absence of the storekeeper, *held* not repealed by the National Prohibition Act, and an indictment for violation of said sections sustained.

3. **Internal revenue ☞2—Offense of unlawful removal of spirits from warehouse not same as illegal transportation.**
   The removal of distilled spirits from a government warehouse without payment of the tax thereon, or in the absence or without the knowledge of the storekeeper, contrary to Rev. St. § 3296, and Revenue Act Aug. 27, 1894, §§ 51, 59, though in a sense the transportation of the spirits, is not the same offense as the illegal transportation of intoxicating liquor contrary to National Prohibition Act, tit. 2 and 3, as respects the question of implied repeal.

4. **Internal revenue ☞39, 40—Removal of spirits from warehouse without payment of tax, etc., not warranted by permit under National Prohibition Act.**
   A permit under the National Prohibition Act for the removal of distilled spirits from a government warehouse will not justify such removal without the payment of the tax imposed thereon, or in the absence or without the knowledge of the storekeeper, in violation of Rev. St. § 3296, and Revenue Act Aug. 27, 1894, §§ 51, 59.

Criminal prosecution by the United States against Oscar C. Freidericks and others. On demurrer to indictment. Overruled.

Isaac Gross, Asst. U. S. Atty., of Jersey City, N. J.

Samuel Kessler, of Newark, N. J., for defendant Freidericks.

RELLSTAB, District Judge. The indictment contains three counts, to which the defendant Freidericks demurs. In substance, and so far as pertinent to the present inquiry, they charge:

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*First Count.* That on or about September 12, 1920, the defendants, with unknown others, intending to commit an offense against the United States, fraudulently, etc., conspired to unlawfully remove from the La Breque Company, Incorporated, warehouse at 600 Ogden street, in the city of Newark, New Jersey—a United States government bonded warehouse for spirits authorized by law—a quantity of distilled spirits, to wit, 400 gallons of Overholt and Glenmore whisky, on which the tax had not been paid, and that to effect the object of said conspiracy, the named defendants, on or about that date, placed the whisky into empty barrels and cans theretofore taken by them to the La Breque warehouse, and did remove the whisky on which the tax had not been paid from that warehouse to a place on Ferry street, near Wilson avenue, in said city.

*Second Count.* The unlawful removal of the liquor on which the tax had not been paid from the La Breque warehouse to the Ferry street location.

*Third Count.* The unlawful removal of the liquor from the La Breque warehouse to the Ferry street location, in the absence, and without the knowledge of the storekeeper in charge of the warehouse, and by breaking and tampering with its locks.

The greater number of the grounds of demurrer filed are too general and vague for consideration, and were not argued, either orally or in the brief. Those argued are to the effect that section 3296, R. S. (Comp. Stat. § 6038), and section 51 of the Act of August 27, 1894, 28 Stat. 565 (Comp. Stat. § 6058), indorsed on the indictment as the sections violated, as well as sections 600 and 604 of the Act of February 24, 1919, 40 Stat. 1105 (Comp. St. Ann. Supp. 1919, §§ 5986e and 5986j), were repealed by the National Prohibition Act (41 Stat. 305), hereinafter called the Enforcement Act.

The reported federal court decisions dealing with like contentions differ greatly as to the effect of the Enforcement Act upon such earlier laws. Except that later decisions take the opposite view from that reached in United States v. Turner (D. C. W. D. Va.) 266 Fed. 248, which held on reasons which to my mind are convincing that R. S. § 3296, was not repealed by the Enforcement Act, I should have been content to overrule this demurrer on a mere citation of that case. However, in view of such differing opinions, and particularly of that in Reed v. Thurmond (C. C. A. 4) 269 Fed. 252, said by the demurrant to overrule the Turner Case, I am constrained to give the matter a more extended consideration.

[1] The indorsements constitute no part of the indictment, and it will be upheld if there is any act in force which can sustain it, whether any act is specifically mentioned therein, or if a different one is indorsed thereon. Williams v. United States, 168 U. S. 382, 389, 18 Sup. Ct. 92, 42 L. Ed. 509; United States v. Nixon, 235 U. S. 231, 35 Sup. Ct. 49, 59 L. Ed. 207; United States v. Wood (D. C. N. J.) 168 Fed. 438. However, in my judgment, the sections so indorsed furnish a legal basis for the challenged indictment.

[2] The Enforcement Act does not expressly repeal these sections.

The contention is that it does so by necessary implication. The question to be considered, therefore, is simply one of statutory interpretation.

"Where two statutes cover, in whole or in part, the same matter, and are not absolutely irreconcilable, and no purpose to repeal the earlier act is expressed or clearly indicated, the court will, if possible, give effect to both." Frost v. Wenie, 157 U. S. 46, 15 Sup. Ct. 532, 39 L. Ed. 614; United States v. Lee Yen Tai, 185 U. S. 213, 22 Sup. Ct. 629, 46 L. Ed. 878; Franke v. Murray (C. C. A. 8) 248 Fed. 865, 160 C. C. A. 623, L. R. A. 1918E, 1015, Ann. Cas. 1918D, 98; United States v. Sacein Rouhana Farhat (D. C. S. D. Ohio, E. D.) 269 Fed. 33.

Manifestly this act was not intended to prescribe the only rules which should govern the manufacture of and traffic in intoxicating liquor. Neither in title nor provision is there warrant for the contention that this act was to supplant in toto the earlier laws dealing with the general subject of manufacture of and traffic in intoxicating liquor. True, it was a prohibitory enactment; but the prohibitions did not go beyond those ordained by the Eighteenth Amendment, which were limited to the manufacture of and traffic in intoxicating liquor for beverage purposes. On the contrary, the act (sections 3, 6, and 12, title 2) contemplates the manufacture of and traffic in alcoholic liquors for nonbeverage purposes. In section 3 it is declared that all the provisions of the act were to "be liberally construed to the end that the use of intoxicating liquor as a beverage may ·be prevented." And section 35 of the same title declares:

"All provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws. This act shall not relieve any one from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve any one from criminal liability, nor shall this Act relieve any person from any liability, civil or criminal, heretofore, or hereafter incurred under existing laws."

This section gives legislative emphasis and sanction to the well-supported canon of interpretation of statutes, viz. repeals by implication are not favored, and may be inferred only if the later statute is so repugnant to or inconsistent with the earlier one that it is clear that the legislative body must have so intended. Wood v. United States, 41 U. S. (16 Pet.) 342, 10 L. Ed. 987; Arthur v. Homer, 96 U. S. 137, 24 L. Ed. 811; Witte v. Shelton (C. C. A. 8) 240 Fed. 265, 153 C. C. A. 191. The word "traffic," as used in section 35, must be given its larger significance. It is a generalization of the more specific terms used in the other parts of the act, such as "sell," "purchase," "barter," "storage," "transport," "import," "export," "prescribe," "deliver," and "furnish" (see sections 3, 6, 7, 10, 13, 14, 26, 33, and 37), and includes every step taken in the commerce in liquor from the man-

ufacturer to its ultimate destination. There is no mistaking the legislative purpose expressed in the quoted section. It is to continue in force all previous legislation not inconsistent with its provisions.

Therefore, as the question of repeal in the instant case is limited to whether the cited sections of the earlier laws are inconsistent with the Enforcement Act, these sections, as well as the pertinent ones of the later act, need to be stated. Section 3296, R. S., a re-enactment of section 36 of the Act of July 20, 1868, 15 Stat. 140 (Comp. Stat. § 6130), inter alia, denounces as crimes the removal, or aiding the removal, of distilled spirits "on which the tax has not been paid to a place other than the distillery warehouse provided by law," and the removal, or aiding the removal, of such spirits "from any * * * warehouse for distilled spirits authorized by law, in any manner other than is provided by law."

Section 51 of the Revenue Act of August 27, 1894, 28 Stat. 564 (Wilson Tariff Act; Comp. Stat. § 6058), authorizes the Commissioner of Internal Revenue, upon terms, to establish bonded warehouses for the exclusive "storage of spirits distilled from materials other than fruit," and provides that such warehouses shall be in charge of a storekeeper and be kept securely locked, and not be unlocked or opened except in the presence of the storekeeper. Section 59 of this act (Comp. Stat. § 6065) denounces as crimes violations of the provisions of section 51, and also the taking from any such warehouse of any distilled spirits deposited therein, without a full compliance with that act.

Sections 600 (a) and (b) and 604 of the Revenue Act approved February 24, 1919, 40 Stat. 1057, 1105 (Comp. Stat. Ann. Supp. 1919, §§ 5986e, 5986f, and 5986j), impose a tax on distilled spirits then in bond, or that have been, or thereafter may be, produced in or imported into the United States; a distinction being made in the amount of tax between that held for beverage purposes and that held for other purposes. The tax imposed under section 600 is to be paid on withdrawal of the liquor and is to be in lieu of all internal revenue taxes theretofore imposed.

The Enforcement Act has three main divisions. Title 1 deals exclusively with the enforcement of the war-time prohibition acts. See list in United States v. Turner (D. C.) 266 Fed. 248, 249, supra. These were emergency measures, and were to be in operation only during the period of the war and until the termination of demobilization. The remaining divisions—titles 2 and 3—are respectively entitled "Prohibition of Intoxicating Liquors" and "Industrial Alcohol." The main purpose of the legislation grouped under title 2 is the enforcement of the prohibitions of the Eighteenth Amendment, which, as noted, by its own limitations, applies only to intoxicating liquors for beverage purposes. The sections found under title 3 apply only to the production of industrial alcohol, and regulate its manufacture, storage, and distribution.

The referred to sections of the revenue laws, like other provisions of the internal revenue laws, at the time of their enactment, had no other purpose than to secure to the government the taxes imposed upon

intoxicating liquors. These, other than sections 600 and 604 of the Act of February 24, 1919, were passed at a time when the government was not required to observe any distinction as to the ultimate purpose of such liquors; i. e., whether for beverage or other uses. However, the last two mentioned sections were passed while the war-time prohibition acts were in force and after the Eighteenth Amendment had been adopted.

One of these war-time prohibition acts, that approved August 10, 1917 (40 Stat. 276; Comp. Stat. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛l), forbade the use of food materials in the production of distilled spirits for beverage purposes, but expressly authorized such production for other than beverage purposes. Sec ion 15. The other of such acts, that approved November 21, 1918 (40 Stat. 1045; Comp. Stat. Supp. 1919, § 3115¹¹/₁₂f), provided that during the war, and until demobilization had been effected, it should be "unlawful to sell for beverage purposes any distilled spirits, and during said time no distilled spirits held in bond [should] be removed therefrom for beverage purposes except for export." Section 1, par. 4.

Therefore, when sections 600 and 604 of the Act of February 24, 1919 (called the Revenue Act of 1918), were enacted, Congress had before it the distinction made by law between distilled spirits to be used as beverages and those to be used for other purposes, and in the passage of such later enactment it provided a different rate of tax based on such difference in use. It also knew that distilled spirits then held in bond under the war-time prohibition acts could not be removed for beverage purposes except for export; also that because of the adoption of the Eighteenth Amendment the time would soon be when liquor for such purposes could not be even exported. With this knowledge, by the last-named sections, it imposed a tax on the distilled spirits then in bond, regardless of the uses for which they were held, or whether any tax had been previously paid thereon. It also expressly provided therein that, in case the tax theretofore imposed by law had not been paid, the new tax (in lieu of the old) was to be paid when the distilled spirits were withdrawn, and that such tax was to be "collected under the provisions of existing law." Section 600a.

With this clearly manifested legislative purpose to continue to tax all distilled spirits (sections 600 and 604, supra), and to penalize any one who should remove from a bonded warehouse those upon which the tax had not been paid (R. S. § 3296), or who should remove them from such warehouse in the absence of the duly appointed storekeeper (sections 51 and 59 of the Act of August 27, 1894), what is there in the Enforcement Act that is so repugnant to these earlier acts as to require a judicial determination that all of them were impliedly abrogated or repealed by it? In answering this inquiry it should be constantly kept in mind that none of the counts in the indictment charges a violation of the revenue laws relating to the manufacture or sale of intoxicating liquor. They each charge a violation of certain provisions of those laws pertaining to the removal of distilled spirits from authorized warehouses, which provisions are intended to secure to the

government the taxes imposed upon such liquors. The Enforcement Act imposes no taxes on intoxicating liquors, except as a penalty, and has no provisions designed to secure the payment to the government of any taxes imposed on such liquors. However, it distinctly reasserts the government's purpose of continuing to tax these liquors in its proviso that—

"This act shall not relieve any one from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor." Title 2, § 35, cl. 2.

The penalty taxes referred to in the later act apply only to the cases of illegal manufacture or sale of liquor, and are to be "in double the amount now provided by law." Id. cl. 3. This act prescribes no penalties for removing the liquors from warehouses without having paid the taxes imposed thereon, but it expressly declares that the act shall not relieve any person from any liability "civil or criminal, heretofore or hereafter incurred under existing laws." Id. last cl. Furthermore, section 37 of this title is a legislative admission that there was still a legitimate property and traffic in intoxicating liquor manufactured before this act went into effect, and that it was taxable under existing laws. The first paragraph of that section provides:

"Nothing herein shall prevent the storage in United States bonded warehouses of all liquor manufactured prior to the taking effect of this act, or prevent the transportation of such liquor to such warehouses or to any wholesale druggists for sale to such druggist for purposes not prohibited when the tax is paid, and permits may be issued therefor."

In other parts of that section the existence of bonded plants and warehouses for the holding of malt and vinous liquors containing more than the prescribed alcoholic content was recognized and authorized to be utilized "for the purpose of having the alcohol extracted therefrom."

In title 3 of the act, devoted to regulating the production and distribution of "industrial alcohol," the definition of which is the same as given in R. S. § 3248 (Comp. Stat. § 5982), we have further manifestation that the sections of the revenue law underlying the present indictment were intended to be kept in force. This title expressly authorizes the manufacture of alcoholic liquor. It contains provisions intended both to prevent the traffic in liquors for beverage purposes and to regulate its production, storage, and distribution for industrial purposes.

It takes cognizance of the storage in bonded warehouses of distilled spirits "fit for beverage purposes," and authorizes any such liquor "remaining in any bonded warehouse" on or before the going into effect of the Eighteenth Amendment, under regulations, to be "withdrawn therefrom either for denaturation at any bonded denaturing plant or for deposit in a bonded warehouse established under this act." Id. § 6. It provides that "industrial alcohol plants and bonded warehouses established under the provisions of this title" shall be exempt from the requirements of 41 specified sections of the Revised Statutes (not including 3296) and 15 designated sections of the Act of August 27, 1894, including sections 51 and 59 of that act. (Id. § 9). So far as R. S. § 3296, is concerned, its exclusion from the sections

273 F.—13

declared to be not applicable establishes that at least for the purposes of title 3 such section is still in force. Furthermore—and this with reference to all of the excepted sections—it is to be noted that those not applicable are declared to be inapplicable only to the plants and warehouses established under that title of the act. Id. § 9. And it is not overemphasizing such limitations to suggest that the enumeration of the sections inapplicable to specified purposes indicates that they were legislatively considered consistent with even the provisions of title 3, because, if they had not been so considered, they would have been embraced within the repealing provisions of section 19 of that title, which provides:

"All prior statutes relating to alcohol as defined in this title are hereby repealed in so far as they are inconsistent with the provisions of this title."

That the provisions of the internal revenue acts relative to the taxing of alcoholic liquors, as well as the penalties denounced for violating them, were to remain in force is evidenced by sections 5, 13, 15, 16, and 18.

[3] Is the removal denounced by the sections underlying the present indictment a transportation within the meaning of the Enforcement Act? There are a number of sections in this act (sections 3, 6, 9, 10, 13, 14, 15, 26, 29, 34, and 37 of title 2, and sections 4, 6, 11, and 14 of title 3) in which the word "transportation" or its equivalent is used. These, the demurrant contends, indicate a legislative purpose to cover the entire subject of transportation, and that, therefore, the sections of the revenue law drawn into question have been superseded. This brings us to the question which in the last analysis is the one to be decided.

A perusal of these enumerated sections shows that none of them deals specifically with the subject-matter of the present indictment, viz. a removal of taxed distilled spirits from a government authorized warehouse without the payment of the tax. They carry no intent to supersede any of the earlier provisions designed to secure to the government the payment of revenue taxes. They are all intended to detect and prevent violations of the Eighteenth Amendment, and may be consistently treated as supplementary to such earlier laws. While the removal of liquors from a government warehouse, in a sense, is a transportation, these sections are not inconsistent with the earlier provisions covering removals from government warehouses. There is no repugnancy between them, and the later enactment must be held, as legislatively declared in the Enforcement Act (title 2, § 35) to be "in addition to existing laws."

Finally, it is contended that the lesser maximum sentence which the Enforcement Act authorizes for the illegal transportation of intoxicating liquors evinces a legislative purpose to supersede the earlier laws. Undoubtedly, if the offenses charged in the indictment are the same as denounced in the Enforcement Act, it, and not the earlier acts, would fix the limit of the punishment that could be imposed, and the earlier acts would be superseded to that extent. But none of the acts of transportation forbidden by the Enforcement Act are the same as denounced by these earlier laws and charged in the present indictment.

"The test of identity of offenses is whether the same evidence is required to sustain them; if not, then the fact that both charges relate to and grow out of one transaction does not make a single offense, where two are defined by the statutes." Morgan v. Devine, 237 U. S. 632, 641, 35 Sup. Ct. 712, 59 L. Ed. 1153, and cases cited.

To transport liquor without the required permit (title 2, § 3), failure to make a permanent record of the amount and kind of liquor transported and the name and address of consignor and consignee, etc. (Id. § 10), failure to state on the containers the specified information (Id. § 14), and to transport such containers on which there is a known false statement (Id. § 15), are all made crimes and punishable under the Enforcement Act. However, the requirements of the Enforcement Act are not substitutional, but additional. All these might be fulfilled, and yet present no defense to the crimes charged in the indictment.

Failure to pay the tax on the liquor before removing it from the bonded warehouse, or to remove it during the absence of the storekeeper or without his knowledge, which are denounced by the earlier act, are a different class of offenses from those of transporting liquor without a permit, or without complying with the other requirements of the Enforcement Act, relative to transportation. And a conviction or acquittal of any or all of one class would not exempt the defendant from prosecution or conviction of any or all of the other class. Carter v. McClaughry, 183 U. S. 367, 22 Sup. Ct. 181, 46 L. Ed. 236; Gavieres v. United States, 220 U. S. 338, 31 Sup. Ct. 421, 55 L. Ed. 489; Diaz v. United States, 223 U. S. 442, 32 Sup. Ct. 250, 56 L. Ed. 500, Ann. Cas. 1913C, 1138; Ebeling v. Morgan, 237 U. S. 625;[1] Morgan v. Devine, 237 U. S. 632, 35 Sup. Ct. 712, 59 L. Ed. 1153, supra; United States v. Butt, 254 U. S. 38, 41 Sup. Ct. 37, 65 L. Ed. ——, decided November 8, 1920; Bens v. United States (C. C. A. 2) 266 Fed. 152; United States v. Turner (D. C. W. D. Va.) 266 Fed. 248, supra; United States v. Sacein Rouhana Farhat (D. C. S. D. Ohio, E. D.) 269 Fed. 33, supra.

[4] No permit authorized to be given under the Enforcement Act would justify the removal of distilled spirits from a government warehouse without paying the tax imposed on such liquor—the crime denounced by R. S. § 3296, and made the basis of counts 1 and 2. Neither would the permit justify the removal of such liquors in the absence, etc., of the storekeeper in charge of such warehouse—the crime denounced by the pertinent sections of the act of 1894 underlying the third count. Back of the required permit, and of all the other requirements of the Enforcement Act relative to transportation, is the question (crucial in this case): Was the liquor removed from the government warehouse without paying the tax imposed thereon, etc.?

Turning, now, to the cases cited by the demurrant as authorities for a different conclusion from that here reached, United States v. Windham (D. C. E. D. S. C.) 264 Fed. 376; United States v. Yuginni (D. C. Or.) 266 Fed. 746; United States v. Puhac (D. C. W. D. Pa.) 268 Fed. 392; United States v. Stafoff (D. C. E. D. Mo. E. D.) 268 Fed. 417; The Goodhope (D. C. W. D. Wash. N. D.) 268 Fed. 694;

[1] 35 Sup. Ct. 710, 59 L. Ed. 1151.

United States v. Fortman (D. C. W. D. Okl.) 268 Fed. 873; United States v. One Haynes Automobile (D. C. S. D. Fla.) 268 Fed. 1003; also Ketchum v. United States (C. C. A. 8) 270 Fed. 416 (not mentioned by demurrant)—are cases deciding that sections of the Revised Statutes (revenue laws) other than those involved in the instant case were repealed by the Enforcement Act, viz. section 3242 (Comp. Stat. § 5965), carrying on liquor business without payment of tax; section 3257 (Comp. Stat. § 5993), distilling without payment of tax; section 3258 (Comp. Stat. § 5994), failure to register stills; sections 3260 (Comp. Stat. § 5997) and 3281 (Comp. Stat. § 6021), failure to bond distillery; section 3061 (Comp. Stat. § 5763) et seq. and 3450 (Comp. Stat. § 6352), forfeiting vessels, etc., used in violating law; section 3279 (Comp. Stat. § 6019), failure to place sign on distilleries; and section 3282 (Comp. Stat. § 6022), unlawfully making mash, etc.

The cases reaching a different conclusion concerning some of the same sections are United States v. Sohm (D. C. Mont.) 265 Fed. 910; United States v. Turner (D. C. W. D. Va.) 266 Fed. 248, supra; United States v. Sacein Rouhana Farhat (D. C. S. D. Ohio, E. D.) 269 Fed. 33, supra; United States v. Phillips, 270 Fed. 281. For other cases on cognate subjects, see Ex parte Ramsey (D. C. S. D. Fla.) 265 Fed. 950; United States v. One Essex Touring Automobile (D. C. N. D. Ga.) 266 Fed. 138; Corneli v. Moore (D. C. E. D. Mo. E. D.) 267 Fed. 456; Ketterer v. Lederer (D. C. E. D. Pa.) 269 Fed. 153, 1010; United States v. Kraus (D. C. S. D. N. Y.) 270 Fed. 578, 582; United States v. Holt (D. C. N. D. W. D.) 270 Fed. 639; Abbate v. United States (C. C. A. 9) 270 Fed. 735; Regal Drug Corporation v. Wardell, Collector, 273 Fed. 182; 31 Opinions of Attorneys General, 442.

In the Windham Case, as well as in Reed v. Thurmond (C. C. A. 4) 269 Fed. 252, supra, the principal reliance of demurrant, R. S. § 3296, was held to have been repealed by the Enforcement Act. In the former case that section was not directly involved, but was referred to as underlying other indictments then on the calendar for prosecution, and was used in the court's opinion as illustrating an earlier statutory denunciation which was superseded by the Enforcement Act.

In the Reed Case the indictment was laid on that section. From the opinion in that case it appears that Reed had in concealment, in a freight room of a railroad station, a quart of "contraband" whisky, on which no tax had been paid, and which a day or so previous to his arrest he "had obtained  *  *  *  'from a man coming along changing trains' who had it in a suit case." From this recital it is clear that Reed was guilty of offenses fully covered by the Enforcement Act, viz. unlawfully obtaining and possessing whisky. But something more than that would have to be shown to bring his conduct within the grasp of section 3296, R. S.; for possession of liquor thus obtained raised no presumption that Reed removed, or knowingly aided the removal of the liquor from a bonded warehouse without the payment of the tax imposed thereon, or that he was guilty of any of the other denunciations of that section.

While these last two named cases clearly show that the learned judges who decided them were of the opinion that this section was repealed by the Enforcement Act, for the reasons given, I am constrained to hold otherwise.

The demurrer is overruled.